EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL LABRADOR y FÉLIX B. ORTIZ, acusados y apelante el primero.

Núm. 7871.—Sometido: *Noviembre* 22, 1940. *Resuelto:* Diciembre 5, 1940.

688

 

*Rafael Labrador,* por su propio derecho; *Hon. Procurador General George A. Malcolm* y *R. A. Gómez, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El acusado apelante. fué convicto ante la Corte de Distrito de Arecibo de un delito de falsificación. La acusación que le fué formulada lee como sigue:

"Los referidos acusados, Rafael Labrador y Félix B. Ortiz, con anterioridad a la fecha de la presentación de esta acusación, o sea el día 8 de enero de 1937, y en Quebradillas, P. R., que forma parte del distrito judicial de Arecibo, P. R., ilegal, voluntaria, maliciosa y criminalmente, y con intención de defraudar a los señores Carlos Roure y Pedro Orpi, de Quebradillas y Arecibo, respectivamente, imitaron y falsificaron un cheque que lee como sigue:

" 'No. 48 Arecibo, P. R. Enero 8—1937
The National City Bank of New York
Arecibo Branch
Pay to the order of Miguel A. Vargas,—$15.75
Quince_____75/100 U. S. Dollars
(Fdo.) Pedro Orpi.'

firmando en la faz de dicho cheque el nombre de Pedro Orpi, cuya firma no es auténtica de Pedro Orpi, y sí imitada y falsificada por los acusados, asimismo comó todo lo manuscrito en dicho cheque; firmando también el acusado Félix B. Ortiz dicho cheque con el nombre supuesto de Miguel A. Vargas. Que los acusados pasaron dicho cheque como genuino al hacerlo efectivo en la farmacia de Carlos Roure, recibiendo por el mismo en efectivo y en mercancías la suma de $15.75, que utilizaron en su propio beneficio; todo a sabiendas de que dicho cheque era falso y estaba imitado y falsificado y con la intención de perjudicar, dañar y defraudar a Pedro Orpi y a Carlos Roure."

Los acusados fueron juzgados conjuntamente y el jurado rindió un veredicto de culpabilidad. El acusado Rafael Labrador apela de la sentencia que le impone un año de presidio.

De la transcripción de evidencia resultan los siguientes hechos:

Los dos acusados, en unión de un tercero llamado Batista y de otra persona, viajaban alrededor de la Isla, en un automóvil público, alquilado. Guiaba el acusado Félix B. Ortiz. El automóvil se detuvo en el pueblo de Quebradillas, del término judicial de Arecibo, en la plaza de dicho pueblo, frente a la farmacia Roure. Allí descendieron ambos acusados. Rafael Labrador hizo que el dependiente de la farmacia le pusiera en los ojos unas gotas para la vista y además compró una caja de polvos Coty. Félix B. Ortiz compró un vendaje y otras cosas. El acusado Ortiz entregó el cheque descrito en la acusación. La señorita encargada de la farmacia cobró el gasto hecho por los dos acusados, de acuerdo con las instrucciones de ambos y que ascendía a $2.30, y entregó la vuelta a Ortiz. El cheque fué enviado al banco y no fué aceptado por ser falsa la firma de Orpi.

La prueba del fiscal sostiene además lo siguiente:

La señorita Florit, encargada de la farmacia, declaró que el acusado Ortiz se dirigió a ella y le manifestó que él era Miguel A. Vargas, a cuyo favor se expidió el cheque; y que lo endosó en su presencia con ese nombre, sobre el mostrador de la farmacia; que esto ocurrió a pocos pasos de Labrador, quien estuvo presente durante la transacción; y que el acusado Ortiz le preguntó, al entrar a la farmacia, que si estaba dispuesta a cambiar un cheque de don Pedro Orpi. De acuerdo con la declaración de esta señorita, los acusados hablaban uno con el otro mientras se hacía este endoso. Declaró ella:

"P. ¿Pero le pidió que le cambiara un cheque?—Sí, señor; y al hacer el paquete, todavía los artículos en el mostrador, me dijo, si podía darle una pluma para firmar el cheque, que el cheque estaba a nombre de él, que era él Miguel A. Vargas, y le di la pluma y

firmó el cheque y cobré dos pesos y pico, no sé si $2.30, y le devolví el dinero y ellos hablaban del trabajo, que no podía ir uno a trabajar, que lo disculpara con el jefe, la conversación de ellos y el señor éste le dijo que recordara que llevaban un enfermo grave en el carro, que tenía prisa.

"P.—¿Quién?—Labrador.

"P. ¿Le dijo a Ortiz qué?—Que llevaban un enfermo grave, y él tenía más prisa que el otro señor, que parece que no tenía ninguna y le hice el paquete de las medicinas y le devolví y se fueron."

Justino Santiago, policía insular, declaró que al arrestar a los acusados éstos confesaron la comisión del delito. Dijo Santiago: "El acusado Félix B. Ortiz me dijo que había hecho efectivo el cheque en la farmacia Roure, pero que el cheque había sido llenado por Labrador y él había escrito al dorso, Miguel A. Vargas, e interrogado Labrador admitió que efectivamente había llenado el cheque." Además de estos testigos declararon Pedro Orpi, el farmacéutico Roure y un empleado del banco.

La prueba de defensa fué presentada conjuntamente, aunque ambos acusados estaban representados por abogados distintos. Ambos acusados declararon, en síntesis, que el cheque lo traía Batista; que al anunciar Ortiz que el automóvil necesitaba gasolina, Batista le entregó el cheque para que lo cambiara, cobrara el pasaje y comprara gasolina. Ortiz alegó qué el cheque él lo había recibido, ya endosado, y que se lo habían cambiado en la farmacia sin que él lo endosara o firmara.

Labrador, el apelante, dice que él vió a Batista entregar el cheque a Ortiz y a éste cambiarlo. Al ser contrainterrogado por el fiscal, contesta así:

"P. ¿Y afirma que estando en la farmacia el acusado Ortiz cambió el cheque y no oyó conversación de la persona que se lo cambió? —Oí la esencia de la conversación.

"P. ¿Cómo fué?—Explicó a la señora Da. Isabel que si en ausencia del dueño de la farmacia ella tenía autorización para cambiar un cheque, que él tenía necesidad de cambiar y ella contestó, que élla podía cambiarlo.

"P. ¿Fué antes o después de la compra?—En el momento.

"P. ¿No le preguntó él si conocía a Pedro Orpi?—No oí.

"P. ¿Vió cuando firmó el cheque?—Tampoco.

"P. ¿Vió cuando dijo que era él Miguel A. Vargas?—Tampoco.

"P. ¿Pero estaba allí?—Estaba en un asunto delicado para mí."

Admitió también el apelante que había comprado una caja de polvos que fué pagada por Ortiz, junto con las otras medicinas compradas por éste, con el cheque. Según declaró Ortiz, "Lo que cogió allí lo cogió con autorización de la persona que dió el cheque. Lo autorizó a que cogiera una caja de polvos Coty para llevarle a la señora."

El apelante señala seis errores. La cuestión que plantea el primer señalamiento es la siguiente: ¿Pueden acumularse, en una sola acusación, varios actos realizados en relación con la falsificación de un documento, tales como la expedición del cheque, su endoso y la presentación y cobro del mismo?

En *Pueblo* v. *Jiménez*, 34 D.P.R. 143, se consideró esta misma cuestión, la que. fué resuelta en contra del apelante, así:

"Este artículo (413 del Código Penal) comprende más de un medio por el que se puede cometer el delito de falsificación. Un mismo hecho puede ejecutarse realizando uno de los actos enumerados o abarcando varios, pero sea uno o diversos los actos realizados, siendo el elemento esencial del delito el de defraudar, el delito que se comete no es más que uno y es el de falsificación.

"La acusación en este caso alega los varios actos que llevó a cabo el acusado para ejecutar el delito y que están comprendidos en el artículo 413. No es defecto, por consiguiente, como se sostiene por el apelante, que los cargos estén involucrados en la acusación y no separados. La acusación en este caso casi sigue en sus términos la de *El Pueblo* v. *Vélez*, 17 D.P.R. 1016, y en él se declaró suficiente."

Véanse 12 Cal. Jur. 660; *People* v. *Mitchell*, 92 Cal. 590, 28 P. 597, 598; *People* v. *Harrold*, 84 Cal. 567, 24 P. 106; *People* v. *Leyshon*, 108 Cal. 440, 41 P. 480.

La segunda cuestión es si al entrar a juicio debe el fiscal elegir entre los actos imputados en la acusación, y

presentar su caso a base de uno de dichos actos. Al efecto dice Corpus Juris:

". . . Cuando el estatuto permite la acumulación de distintas ofensas bajo diferentes cargos (*counts*), la corte no está obligada a exigir al fiscal que elija el cargo sobre el cual someterá a juicio al acusado. De acuerdo con esto, cuando en una misma acusación se incluyen cargos que imputan respectivamente la falsificación y el uso del documento falsificado, el fiscal no puede ser obligado a elegir entre dichos dos cargos; e igualmente se ha sostenido que cuando la acusación imputa varias ofensas, distintas en su aspecto legal pero resultantes substancialmente de la misma transacción, tales como la falsificación de una hipoteca, la del certificado de reconocimiento de la misma, y la de la fianza que la acompaña e igualmente el haber utilizado cada uno de ellos, el acusado no tiene un derecho absoluto a obligar al fiscal a elegir." 26 C. J., pág. 957, sec. 114.

La corte inferior no incurrió en error al desestimar la excepción perentoria.

Los señalamientos tercero, cuarto y quinto leen como sigue:

"3. Conceptuar al acusado Rafael Labrador actor o coadyuvante de los actos conceptuados delictivos.

"4. Haberse dado crédito a la declaración del testigo Justino Santiago, en la parte de ella referente a Rafael Labrador.

"5. Conceptuar constitutivo de falsificación el único acto atribuído a Rafael Labrador."

En su alegato el apelante imputa a la corte la errónea apreciación de la prueba. El apelante alega que la acusación contiene dos imputaciones: 1, contra los dos acusados, de haber falsificado el cheque, imitando la firma de Pedro Orpi; 2, contra el coacusado Félix Ortiz, de endosar el cheque con el nombre de Miguel A. Vargas.

Y alega el acusado que el primer cargo, que es el que le atañe, no fué debidamente probado, ya que la confesión que le atribuyó el testigo Santiago, policía insular, no fué corroborada.

No hubo error en la apreciación de la evidencia, que es, a nuestro juicio, suficiente para sostener el veredicto y la

sentencia en contra del apelante. La admisión o confesión hecha por el acusado apelante al policía Justino Santiago está ampliamente justificada por el resto de la evidencia. El acusado Labrador no solamente admitió haber hecho el cheque, si que estuvo presente y vió y oyó cuando el acusado Ortiz endosó el cheque y dijo que él era Miguel A. Vargas, o sea la persona a favor de quien aparecía expedido el cheque. No se ha alegado, ni tampoco aparece de los autos, que el jurado haya actuado movido por pasión, prejuicio o parcialidad. *Debemos respetar su veredicto y confirmar la sentencia recurrida.*