EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* HUGO CARBALLOSA VÁZQUEZ y RICHARD BALZAC, acusados y recurridos.

*Número:* O-85-429        *Resuelto:* 25 de junio de 1992

*Rafael Ortiz Carrión, Procurador General,* y *Justo Gorbea Varona, Subprocurador General,* abogados de El Pueblo; *R. Adolfo de Castro, Guillermo De Guzmán Vendrell* y *Marta Quiñones Zambrana,* de *Cancio, Nadal & Rivera,* abogados del recurrido Richard Balzac; *Wilfredo Rodríguez Figueroa,* abogado del recurrido Hugo Carballosa Vázquez.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El presente recurso nos permite resolver, en primer lugar, si puede configurarse el delito de *oferta de soborno,* Art. 212 del Código Penal,([1]) cuando tal oferta es dirigida a un agente encubierto de la Policía para que éste realice un acto comprendido dentro de las funciones del cargo que ha asumido a los fines de realizar una investigación criminal; en segundo término, debemos resolver en qué momento se considera presentada la denuncia, según se utiliza ese término en la regla 64(n)(2) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a los fines de determinar si la misma fue

---

([1]) 33 L.P.R.A. sec. 4363.

presentada dentro de los sesenta (60) días siguientes al arresto de los imputados por la comisión de un delito menos grave; por último, si el incluir en una acusación un desglose de las diferentes fechas en que alegadamente se llevaron a cabo ofertas y entregas de dinero viola las disposiciones de la Regla 64(j) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.([2])

I

El Pueblo de Puerto Rico presentó seis (6) denuncias contra Hugo Carballosa y dos (2) contra Richard Balzac imputándoles la comisión del delito de oferta de soborno, Art. 212 del Código Penal, *supra*, y tres (3) denuncias contra ambos por el delito de conspiración, Art. 262 del Código Penal, 33 L.P.R.A. sec. 4523. Luego del arresto de los acusados, la vista preliminar por el delito de oferta de soborno fue suspendida, primero a petición de los imputados y luego a petición del Fiscal.

En dicha vista declaró el sargento de la Policía, Adalberto Mercado, quien pertenecía a la División de Inteligencia Criminal. Éste había estado realizando una investigación confidencial sobre contrabando de café y había preparado varios informes al respecto. A esos fines, participó en varias reuniones con el Director de la División de Inteligencia y con el entonces Secretario del Departamento de Agricultura de Puerto Rico (en adelante Departamento). En una de las reuniones se le entregó a Mercado copia de una carta que se había recibido en el Departamento. En esta carta Hugo Carballosa expresaba que se había enterado por medio de un programa de televisión que el Departamento tenía almacenado un excedente de 53,000 quintales de café de segunda clase y, en la misma, éste le hacía

---

([2]) Dicha disposición prohíbe el que se incluyan en una acusación o denuncia más de un delito.

una oferta al Departamento como solución para disponer de ese sobrante de café.(³) El Secretario de Agricultura solicitó que se realizara una investigación sobre esta oferta debido a que el nombre de Carballosa se mencionaba en algunos informes preparados por el Sargento Mercado y porque la oferta parecía ser demasiado generosa. Mercado solicitó entonces los servicios del agente Adrián Pagán para que éste realizara la investigación solicitada en torno a dicha propuesta.

Por su parte, el agente Pagán declaró en tal vista preliminar que el 14 de noviembre de 1983, y retroactivo al 9 de noviembre de 1983, suscribió los documentos pertinentes a los fines de ocupar la posición de Ayudante Especial del Administrador de la Administración para el Desarrollo Agrícola, a cargo de los Programas de Intercambio de Café. Desde la fecha antes mencionada hasta el 30 de marzo de 1984, dicho agente se dedicó a familiarizarse con el personal y las funciones de dicha Administración. Como tal funcionario, se comunicó posteriormente con Carballosa y acordaron reunirse para discutir la mencionada propuesta.

Se reunieron en varias ocasiones. En la primera de ellas, Pagán informó a Carballosa que estaba estudiando su propuesta para tomar una determinación y hacer una recomendación al Departamento. Carballosa le indicó que él representaba a los hermanos Balzac en Puerto Rico, quienes tenían sus oficinas principales en Nueva York y se dedicaban a los negocios relacionados con el café. En otra ocasión, Carballosa le ofreció parte del dinero que habría de corresponderle a éste como resultado de la transacción a cambio de que Pagán hiciera una recomendación favorable lo antes posible. Le indicó, además, que habría de hablar

---

(³) La oferta consistía en cambiar ese café de segunda clase por un café de primera importado y semitostado al 10%, más una bonificación de $12 por quintal para el Departamento de Agricultura. La carta también señalaba que si el Departamento de Agricultura aceptaba la oferta, éste obtendría una ganancia de aproximadamente $3,030,540.

con los hermanos Balzac a los fines de llegar a un acuerdo sobre el particular. En una reunión posterior, Carballosa le entregó una carta firmada por él donde le garantizaba la mitad del dinero a ser devengado por éste en el negocio. En una de las reuniones estuvo presente Richard Balzac, quien ratificó dicho ofrecimiento.

Después que se firmó el acuerdo en que Balzac aceptó la contraoferta que le hizo el Departamento, Pagán acompañó a Carballosa a Nueva York a cobrar el dinero que éste le había ofrecido por ayudarle a que se materializara la transacción de café. En Nueva York fueron a la oficina de Balzac, quien le entregó a Pagán $25,000 en efectivo. Días más tarde Carballosa le entregó a Pagán $25,000 adicionales en Puerto Rico.

Tras escuchar esta prueba, el magistrado que presidió la vista preliminar determinó causa probable contra Carballosa y Balzac *por un solo cargo* del delito de oferta de soborno por entender que se trataba de una sola transacción criminal. En la acusación presentada por tal delito, el Fiscal hizo referencia a seis (6) fechas diferentes. Imputó que en cuatro (4) de estas fechas los acusados prometieron dar, y en otras dos (2) entregaron, dinero a un funcionario del Gobierno con el propósito de que "tal remuneración o beneficio habría de influir en cualquier acto, decisión o dictamen de dicha persona en su carácter oficial". *Exhibit* XVII, pág. 22.

En el acto de la lectura de las acusaciones, los acusados solicitaron tiempo para alegar y luego presentaron sendas mociones en las que solicitaron la desestimación de las mismas bajo los incisos (j), (n)(2) y (p) de la Regla 64 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Se celebró una vista oral para discutir estas mociones, a las cuales se opuso por escrito el Ministerio Público. Luego de oír a las partes, el tribunal sostuvo las mismas y ordenó la desestimación de todas y cada una de las acusaciones presentadas. El Pueblo de Puerto Rico recurrió ante este

Tribunal mediante petición de *certiorari*, solicitando la revisión de dicha resolución. Expedimos el auto y ahora procedemos a resolver, atendiendo los planteamientos del Estado en el mismo orden en que fueron hechos.

## II

Señala el Estado que el tribunal *a quo* erró al acoger los planteamientos presentados por ambos imputados en su moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, y proceder a desestimar la acusación presentada en contra de éstos por el delito de oferta de soborno, Art. 212 del Código Penal, *supra*.

Los recurridos alegan, por su parte, que la determinación de causa probable por tal delito no fue hecha con arreglo a derecho porque la evidencia presentada por el Estado en la vista preliminar no estableció uno de los elementos necesarios del delito imputado, ya que quedó establecido que el agente Pagán no era, en realidad, un funcionario del Departamento con facultad en ley para realizar el acto por el cual recibió el supuesto soborno.

Incidió el tribunal de instancia al acoger dicho planteamiento. Veamos.

El Art. 212 del Código Penal de 1974 (33 L.P.R.A. sec. 4363), leído en conjunto con el Art. 209 del mismo Código, 33 L.P.R.A. sec. 4360, dispone:

> Toda persona que directamente o por persona intermedia diere o prometiere a un funcionario o empleado público, o jurado, o árbitro, o cualquier otra persona autorizada en ley para oír o resolver una cuestión o controversia, o a un testigo, dinero o cualquier beneficio ... [para realizar un acto regular de su cargo o función] será sancionada con la pena de reclusión fijada en la sección correspondiente.

El delito de oferta de soborno comprende como una de sus modalidades *dar o prometer* " 'a un funcionario o em-

*pleado público*, directamente o a través de un intermediario, dinero o cualquier beneficio para que realizara un acto regular de su cargo o función...' ". (Énfasis suplido.) *Pueblo v. Márquez y Bermúdez*, 122 D.P.R. 93, 103 (1988). Véase *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 758 (1985).

En *Pueblo v. Bigio Pastrana*, supra, págs. 757–758, resolvimos que "[s]on elementos esenciales del delito de oferta de soborno ... los siguientes: 1. dar u ofrecer dinero o cualquier beneficio; 2. que la dación u ofrecimiento se haga a un funcionario o empleado público, ya sea directamente a él o a través de un intermediario, y 3. que la dación u ofrecimiento se haga con el propósito de que dicho empleado o funcionario realice *un acto regular de su cargo o función*". (Énfasis suplido y escolios omitidos.) Este último requisito es el que suscita la polémica en el presente caso, pues alegan los recurridos que la posición que ocupaba el agente Pagán en el Departamento era sólo para fines de la investigación y que, por lo tanto, el acto que los recurridos pretendían que el agente realizara no era " 'un acto regular de su cargo o función' ", faltando así uno de los elementos esenciales del delito. Apéndice II al Memorando en oposición a petición de *certiorari*, pág. 3.

Como señaláramos en *Pueblo v. Bigio Pastrana*, supra, págs. 756–757, "[e]l Art. 212 condena cierta conducta antisocial e indeseable, la cual corrompe o pretende corromper al *funcionario público*, quien debe descargar gratuitamente las obligaciones inherentes de su cargo sin que esté de por medio emolumento o cualquier beneficio adicional al que por ley le corresponde". (Énfasis suplido.) El delito va dirigido, pues, a penalizar exclusivamente a la persona que mediante el *ofrecimiento o entrega* de cualquier beneficio (monetario o de otra índole) a un funcionario público pretende que este último cumpla con las funciones que está obligado a realizar gratuitamente. Ese tipo de conducta es la "que se pretende reprimir al estatuir el de-

lito de oferta de soborno". *Pueblo v. Bigio Pastrana*, supra, pág. 757. No hay que probar, sin embargo, que el funcionario "tenía la autoridad *final* en la cadena de eventos. ... Es suficiente en derecho que el acto que se interesa llevar a cabo esté comprendido entre los deberes generales del empleado según descritos en su nombramiento y conforme a las tareas que diariamente realiza". (Énfasis en el original.) Íd., pág. 759. Según la evidencia que tuvo ante sí el magistrado en la vista preliminar, al momento de los hechos el agente Pagán había sido nombrado y había tomado posesión del cargo de Ayudante Especial del Administrador, a cargo de los Programas de Intercambio de Café, y temporeramente(⁴) se encontraba ejerciendo las funciones inherentes al cargo. Los recurridos le entregaron el dinero al agente Pagán en la creencia de que éste llevaría a cabo de tal modo un acto regular del cargo o empleo que estaba temporeramente ocupando.(⁵) Eso es *todo* lo que requiere el Art. 212 de nuestro Código Penal, *supra*.

■ Sólo procede declarar con lugar una moción para desestimar una acusación o denuncia basada en el inciso (p) de la Regla 64 de Procedimiento Criminal, *supra*, cuando existe una *ausencia total* de prueba que demuestre la existencia de causa probable para creer que el acusado cometió el delito que se le imputa. *Pueblo v. Tribunal Superior*, 104 D.P.R. 454 (1975). A la luz de los criterios que

---

(⁴) Nuestro Código Penal, en su Art. 7(16), define al *funcionario o empleado público* como "[t]oda persona que ejerza un cargo o desempeñe una función retribuida o gratuita, permanente o *temporal*, en virtud de *cualquier tipo de nombramiento, contrato o designación* ...". (Énfasis suplido.) 33 L.P.R.A. sec. 3022(16).

(⁵) Ante un planteamiento similar al que hacen los recurridos en este caso, la Corte de Apelaciones para el Sexto Circuito señaló lo siguiente:

"To limit [Sec. 201 (b) (1)(C)] in the manner suggested by the defendants would excuse bribers of public officials who fully intended to gain an advantage by making a corrupt offer to a public official but were mistaken in their impression of what the public official could lawfully do. The deterrent value of punishing the bad intent of bribers is the same regardless of whether or not the acts to be accomplished are within the scope of the actual lawful duties of the bribed public official and regardless of whether the briber has correctly perceived the precise scope of the official's lawful duties." *United States v. Gjieli*, 717 F.2d 968, 976 (1983).

fijamos en *Pueblo v. Bigio Pastrana,* supra, y de los pronunciamientos que hacemos hoy, forzoso es concluir que erró el tribunal de instancia al determinar que la evidencia que tuvo ante sí el magistrado en la vista preliminar fue insuficiente para presentar las acusaciones contra los recurridos por el delito de infracción al Art. 212 del Código Penal, *supra.*

■ Por último, queremos hacernos eco de los planteamientos que hace el Procurador General Auxiliar en su recurso en torno a la importancia de la figura del agente encubierto en el esclarecimiento y procesamiento de cierto tipo de delitos que, como el caso de autos, tienden a cometerse subrepticiamente. Señala el Procurador, citando el caso *Pueblo v. Seda,* 82 D.P.R. 719, 730 (1961), lo siguiente:

> "No hay duda de que el agente encubierto es un arma de investigación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método. Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito." (Citas omitidas.) Petición de *certiorari,* pág. 7.

Apoyamos el uso apropiado del agente encubierto en aquellos casos relacionados con delitos contra la función pública siempre y cuando su intervención no sea para inducir al acusado a la comisión de un delito que de otro modo no hubiera intentado cometer.

### III

Alega el Estado que erró el tribunal *a quo* al desestimar bajo la Regla 64(n)(2) de Procedimiento Criminal, *supra,* las acusaciones presentadas contra ambos imputados por el delito de *conspiración.* No se cometió dicho error.

■ La Regla 64(n)(2), *supra,* establece como motivo

para desestimar la acusación el que no se haya presentado acusación o denuncia contra el acusado dentro de los sesenta (60) días de su arresto o citación. Esta regla va dirigida a proteger el derecho constitucional *a juicio rápido*.[6] En este caso habían transcurrido ciento cuarenta y nueve (149) días desde la fecha del arresto de Carballosa y ciento treinta (130) días desde que se diligenció el arresto de Balzac, cuando fueron presentadas por el Fiscal las acusaciones en contra de éstos por el delito de conspiración. El hecho de que los imputados hayan solicitado la suspensión de la vista preliminar señalada para determinar si existía o no causa probable para acusar a los recurridos por el delito grave de oferta de soborno, en ninguna forma interrumpió el término de sesenta (60) días que tenía el Fiscal para presentar las acusaciones por el delito menos grave de conspiración, contados a partir de la fecha del arresto de los acusados. Para presentar las acusaciones por tal delito no fue necesario la celebración de una vista preliminar previa. Regla 23(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Aun cuando el delito de conspiración es menos grave, por excepción, es el Tribunal Superior el que tiene competencia exclusiva sobre el mismo. Art. 262 del Código Penal, *supra*. En los procesos iniciados en el Tribunal Superior, la acusación es la primera alegación del Estado. Esta se presenta por el fiscal en la Secretaría del Tribunal Superior luego de firmarla y jurarla. Regla 34 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Sin embargo, la presentación de una denuncia por el delito de conspiración en el Tribunal de Distrito dentro de los sesenta (60) días siguientes al arresto de los acusados, hubiera tenido el mismo efecto que si se hubiese presentado la acusación en el Tribunal Superior, ya que desde que se aprobó la Cons-

---

[6] Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1.

titución en el 1952 los tribunales de Puerto Rico constituyen un sistema judicial unificado en lo que concierne a su jurisdicción, funcionamiento y administración. *Pueblo v. De Jesús Gómez*, 100 D.P.R. 629, 632–633 (1972); Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1.

A tenor con dicho precepto, el señor Procurador alega en apoyo a su segundo señalamiento de error que la denuncia que sirve de base a la expedición de una orden de arresto o citación, conforme dispone la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, es la *misma* "denuncia" a la que alude la Regla 64(n)(2)[7] de Procedimiento Criminal, *supra*, por lo que, según el Procurador, las denuncias en el caso de autos fueron presentadas dentro de los sesenta (60) días del arresto de ambos imputados, cumpliendo así con los términos de juicio rápido que ordena la Regla 64(n)(2) de Procedimiento Criminal, *supra*. Este planteamiento por parte del Estado es inmeritorio y carente de toda lógica procesal.

■ La "denuncia" a que alude la Regla 64(n)(2) de Procedimiento Criminal, *supra*, se refiere a la primera alegación del Estado en un proceso iniciado en el Tribunal de Distrito.[8] Esto ocurre cuando la denuncia original es remitida por el magistrado, una vez determinada causa probable para el arresto o citación del imputado, a la sala correspondiente del Tribunal de Distrito, convirtiéndose entonces en el pliego acusatorio o primera alegación del Estado que sirve de base para el juicio.[9] Es en dicho momento cuando se considera "presentada la denuncia" a que

---

[7] La Regla 64(n)(2) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece como uno de los fundamentos para desestimar una acusación o denuncia lo siguiente: "Que no se presentó acusación o denuncia contra el acusado dentro de los sesenta (60) días de su arresto o citación ...."

[8] Regla 34(B) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

[9] Regla 5, 6(a), 22(c), 24(a), 34(B) y 35(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véase *Pueblo v. Tribunal Superior*, 95 D.P.R. 580, 582 (1967).

hace referencia la Regla 64(n)(2) de Procedimiento Criminal, *supra*.

Por lo antes expuesto resolvemos que actuó correctamente el tribunal *a quo* al desestimar dichas acusaciones a tenor con lo dispuesto en la Regla 64(n)(2), *supra*. Por tratarse de un delito menos grave, dicha desestimación impide la presentación de una nueva acusación por el delito de conspiración.[10]

IV

Como último planteamiento, señala el señor Procurador que también se equivocó el juez de instancia al aplicar el fundamento contenido en el inciso (j) de la Regla 64 de Procedimiento Criminal, *supra*, para desestimar la acusación presentada en contra de ambos imputados por el delito de oferta de soborno. Tal error se cometió. Veamos.

A pesar de que la prueba presentada en la vista preliminar demostró que en varias ocasiones uno solo de los imputados, y en otras ambos conjuntamente, ofrecieron y entregaron dinero al agente Pagán con la inteligencia de que éste, a cambio, ayudara a que se materializara la oferta de compraventa de café que éstos habían hecho al Departamento, el magistrado en la vista preliminar determinó causa probable por *un solo delito* de oferta de soborno porque entendió que se trataba de una sola transacción criminal. A base de dicha determinación, el Fiscal presentó una acusación en contra de ambos por el delito de oferta de soborno, en la cual se alegó en un *solo cargo* que:

> Los referidos acusados, HUGO CARBALLOSA VAZQUEZ y RICHARD BALZAC, actuando en algunas situaciones independientemente y en otras en concierto y común acuerdo y en un designio común, en o allá para los días 24 de abril de 1984, a la 1:30 P.M. en la Calle Hipódromo, Parada 20 en Santurce, Puerto

---

[10] Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Rico, 28 de abril de 1984, a las 7:15 P.M. en la Ave. Campo Rico de Country Club, Río Piedras, Puerto Rico, 22 de mayo de 1984, a las 10:00 A.M. en Hato Rey, Puerto Rico, 4 de junio de 1984, a las 10:55 A.M. en el Hotel Palace de Isla Verde, Puerto Rico, 2 de septiembre de 1984, a las 5:50 P.M. en Bronxville, Nueva York y 21 de septiembre de 1984, a las 9:35 A.M. en la Ave. Campo Rico de Country Club, Río Piedras, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal, voluntaria, maliciosa y criminalmente, prometieron dar en algunas ocasiones y en otras dos entregaron la cantidad de $25,000 y $24,640 respectivamente, a un funcionario de la Administración de Fomento para el Desarrollo Agrícola de Puerto Rico en la inteligencia de que tal remuneración o beneficio habría de influir en cualquier acto, decisión o dictamen de dicha persona en su carácter oficial. *Exhibit* XVII, pág. 22.

El juez de instancia desestimó la acusación *por entender que ésta imputaba en un solo cargo la comisión de más de un delito*, lo que constituye fundamento para desestimar la acusación bajo la Regla 64(j) de Procedimiento Criminal, *supra.*

■ Al así actuar, el juez de instancia cometió error al desestimar la acusación, pues no surge de ésta que se les estuviera imputando a ambos recurridos la comisión de más de un delito en un solo cargo, sino que en un solo cargo se les imputó la comisión de un *delito continuado* que se llevó a cabo mediante diferentes actos realizados en diferentes fechas, y que constituyen las dos (2) modalidades en que puede cometerse el delito imputado.

En la tradición civilista, y en particular en los códigos iberoamericanos, se define el delito continuado como varias violaciones de la misma ley o disposición penal, cometidas en el mismo momento de acción o en momentos diversos con actos ejecutivos de la misma resolución criminal, o con el mismo designio, o con una intención genérica común. Entre los requisitos del delito continuado están: violación de la misma disposición legal, pluralidad de actos o hechos realizados en fechas distintas, una misma resolución, propósito o intención criminal. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 8.4.2., pág. 278.

En este caso se trata de un *solo delito* porque la serie de actos alegadamente realizados por los recurridos violentaron una misma disposición penal y estuvieron dirigidos a alcanzar un mismo fin o designio criminal, aun cuando cada uno de estos actos, de haberse realizado aisladamente y de forma independiente, hubiesen podido ser juzgados como un delito distinto. *Pueblo v. Tribunal Superior*, 94 D.P.R. 392, 396 (1967); *Pueblo v. Adorno*, 81 D.P.R. 518, 535–536 esc. 5 (1959).

■ Cuando todos los actos imputados en un solo cargo constituyen un solo delito, no hay duplicidad y no es de aplicación la Regla 64(j) de Procedimiento Criminal, *supra*, que sólo aplica cuando se imputa más de un delito en un solo cargo.

En *Pueblo v. Echavarry et al.*, 28 D.P.R. 6, 10 (1920), citamos con aprobación del caso *Ben v. State*, 58 Am. Dec. 242, que:

> "Cuando varios actos ejecutados por la misma persona no son sino pasos sucesivos en el curso de un propósito criminal y que constituyen en conjunto un solo delito, aunque cada uno de ellos realizados aisladamente podrían constituir un delito, dichos actos todos pueden ser imputados en un solo cargo[.]" Véanse, además: *United States v. Cohen*, 444 F. Supp. 1314, 1320 (1978); *United States v. Cohen*, 35 F.R.D. 227, 231 (1964), confirmado en *Cohen v. United States*, 378 F.2d 751, 754, *cert.* denegado, 389 U.S. 897 (1967); *United States v. Selage*, 175 F. Supp. 439, 442 (1959).

■ Tampoco existe duplicidad en la acusación por el hecho de que en un solo cargo se haya alegado que ambos imputados cometieron el delito de oferta de soborno bajo las dos (2) modalidades en que éste puede cometerse, o sea, en ocasiones prometiendo dar y en otras entregando dinero a un funcionario público con el propósito de sobornarlo.

■ Cuando un delito puede cometerse en dos (2) o más formas o modalidades diferentes, según tipificadas en

la misma disposición penal, puede incluirse en un solo cargo de la acusación todas las modalidades que alegadamente cometieron los imputados si éstos fueron cometidos con un mismo propósito, fin o designio criminal en un mismo curso de conducta por constituir todos los actos realizados un solo delito. *Pueblo v. Cedeño*, 95 D.P.R. 369, 370 (1967); *Pueblo v. Adorno*, supra, págs. 533–534 esc. 4; *Pueblo v. Palacios*, 66 D.P.R. 961, 962–963 (1947); *Pueblo v. Labrador*, 57 D.P.R. 687, 691 (1940); *Crain v. United States*, 162 U.S. 625, 636 (1896); *United States v. Lubomski*, 277 F. Supp. 713, 718 (1967); *United States v. Ricciardi*, 40 F.R.D. 135, 136 (1965); *United States v. Selage*, supra, pág. 442; *United States v. Raff*, 161 F. Supp. 276, 281 (1958).

Por los fundamentos anteriormente expuestos, *se dictará sentencia que revoque la resolución recurrida en cuanto desestimó la acusación presentada contra ambos imputados por el delito de oferta de soborno, y que confirme dicha resolución en lo referente a la desestimación de las acusaciones presentadas en contra de éstos por el delito de conspiración. Se ordenará la devolución del caso al tribunal de instancia para que continúen los procedimientos en forma compatible con esta opinión.*

El Juez Asociado Señor Rebollo López disintió con opinión escrita.

— o —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

No obstante reconocer que la opinión mayoritaria emitida en el presente caso constituye un admirable y loable esfuerzo por "salvar" una laguna que, desafortunadamente, existe en nuestro ordenamiento penal, *nos vemos imposibilitados de refrendar la misma con nuestro voto de*

*conformidad.* El *principio jurídico* que impide que así lo hagamos resulta ser de *vital importancia* en nuestro ordenamiento jurídico: *el principio de legalidad.*

I

Como clara, correcta y sucintamente expresara este Tribunal hace más de siete décadas en *Pueblo v. Terrasa*, 28 D.P.R. 11, 12 (1920):

> ...para que una persona pueda ser castigada como infractora de una ley penal es necesario que el acto o la omisión que se *castigue aparezca claramente establecido* en la ley, porque no debe quedar convicto un hombre por un delito *que no esté claramente definido y castigado* por las leyes *y jamás debe forzarse el texto de la ley mediante interpretación al efecto* de que quede comprendido en él ningún delito que la Legislatura no haya tenido claramente presente. (Énfasis suplido.)

Conforme, correcta y certeramente, expresamos en *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 662 (1964), que el juez es un intérprete —*y no un creador*— de la ley. Esto es, constituye axioma fundamental, conforme al principio de legalidad, que la Asamblea Legislativa es la que tiene la facultad constitucional *exclusiva* de tipificar los delitos. A esos efectos, véanse: Art. 8 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031;[1] *Pueblo v. Martínez Torres*, 116 D.P.R. 793 (1986); *Pueblo v. Escambrón Beach Club*, 63 D.P.R. 761 (1944); *Corretjer v. Tribl. de Distrito*, 72 D.P.R. 754 (1951); *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981); *Pueblo v. Rodríguez Jiménez*, 128 D.P.R. 114 (1991).

---

[1] Dispone el Art. 8 que:

"No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

"No se podrán crear por analogía delitos, penas, ni medidas de seguridad." 33 L.P.R.A. sec. 3031.

## II

Establece el Art. 209 del vigente Código Penal, 33 L.P.R.A. sec. 4360, que:

Todo *funcionario o empleado público*, o jurado, o árbitro, o cualquier persona autorizada en ley para oír o resolver alguna cuestión o controversia, que solicite o reciba, directamente o por persona intermedia, para sí o para un tercero, dinero o cualquier beneficio, o aceptare una proposición en tal sentido, *por realizar un acto regular de su cargo o función*, será sancionado con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo, de quince (15) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años. (Énfasis suplido.)

Por su parte, el Art. 212 del referido Código, 33 L.P.R.A. sec. 4363, dispone que:

*Sec. 4363. Oferta de soborno*

Toda persona que directamente o por persona intermedia diere o prometiere a un *funcionario o empleado público*, o jurado, o árbitro, o cualquier otra persona autorizada en ley para oír o resolver una cuestión o controversia, o a un testigo, dinero o cualquier beneficio, *con el fin previsto en las secs. 4360 a 4362 de este título*, será sancionada con la pena de reclusión fijada en la sección correspondiente. (Énfasis suplido.)

Esto es, y como correctamente se señala en la opinión mayoritaria emitida, las referidas disposiciones legales, *leídas en conjunto*, establecen que:

"Toda persona que directamente o por persona intermedia diere o prometiere *a un funcionario o empleado público*, o jurado, o árbitro, o cualquier otra persona autorizada en ley para oír o resolver una cuestión o controversia, o a un testigo, dinero o cualquier beneficio ... [*para realizar un acto regular de su cargo o función*] será sancionada con la pena de reclusión fijada en la sección correspondiente." (Énfasis suplido.) Opinión mayoritaria, pág. 848.

## III

En el presente caso, *por más esfuerzos y ejercicios mentales que se realicen,* el agente Adrián García de la Policía de Puerto Rico, que "intervino" con los acusados y a quien alegadamente se le hiciera la oferta de soborno, *no es el "funcionario o empleado público" al cual se refieren, o contemplan, los citados Arts. 209 y 212 del Código Penal de Puerto Rico.* Ello así, llana y sencillamente, *debido a que dicho testigo de cargo, al no ser un empleado bona fide del Departamento de Agricultura de Puerto Rico, no podía recibir el dinero ofrecido como soborno "para realizar un acto regular de su cargo o función",* según ello *claramente establecen y exigen* las antes transcritas disposiciones del Código Penal de Puerto Rico. Opinión mayoritaria, pág. 848.

Dicha "laguna jurídica", desafortunadamente, *no* puede ser suplida por este Tribunal. Ello es de la *competencia exclusiva* de la Asamblea Legislativa. Donde más claro se puede apreciar el error del Tribunal lo sería en el caso de un Jurado. Asumamos, a los fines de ilustración, que el Estado se entera de que una persona intenta sobornar varios de los miembros de un Jurado que se encuentra juzgando un caso criminal. Conforme se resuelve en el día de hoy, el Estado podría hacer pasar como integrantes de ese Jurado a unos agentes encubiertos y éstos ser los "recipientes" de la oferta de soborno. Ello es *jurídicamente* imposible. Los jurados y no los agentes encubiertos, conforme las disposiciones de los antes citados Arts. 209 y 212 del Código Penal de Puerto Rico, son *los únicos autorizados* "en ley para oír o resolver alguna cuestión o controversia ...". En consecuencia, *no* se podría cometer el delito a través de agentes encubiertos.

En cuanto al caso específico hoy ante nuestra consideración, el Tribunal intenta obviar el obstáculo al cual se enfrenta expresando que el agente encubierto había suscrito "los documentos pertinentes *a los fines de ocupar la posi-*

*ción* de *Ayudante Especial* del Administrador de la Administración para el Desarrollo Agrícola, a cargo de los Programas de Intercambio de Café". (Énfasis suplido.) Opinión mayoritaria, pág. 846. La mencionada maniobra, llevada a cabo en dicha agencia administrativa con el obvio propósito de "cualificar" al encubierto como empleado de la misma, no pasa de ser una ficción o engaño (*sham*). Para rechazarla, por impropia e improcedente, basta con cuestionarse si ese agente contaba con los requisitos necesarios, *de estudio y de experiencia*, para ocupar la mencionada plaza de "Ayudante Especial del Administrador".

## IV

En resumen, y por entender que el Tribunal está actuando *ultra vires* —al crear una *nueva modalidad* del delito de oferta de soborno— *disentimos*.