En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>    Peticionaria<br><br>    V.<br><br>Juan Antonio Cortés Rivera<br>    Recurrido | Certiorari<br><br>99TSPR8 |
| --- | --- |

Número del Caso: CC-98-0220

Abogados de la Parte Peticionaria: Hon. Carlos Lugo Fiol
                                    Procurador General
                                    Lcda. Rose Mary Corchado Lorent
                                    Procuradora General Auxiliar

Abogado de la Parte Recurrida: Lcdo. José Padilla Torres

Tribunal de Instancia: Superior de Carolina

Juez del Tribunal de Primera Instancia: Hon. Angel O. Ramírez Ramírez

Tribunal de Circuito de Apelaciones: Circuito Regional VII

Juez Ponente: Hon. Salas Soler

Fecha: 1/28/1999

Materia: Art. 105

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrente

        v.                     CC-98-220        Certiorari

Juan Antonio Cortés Rivera

    Recurrido

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico, a 28 de enero de 1999

Nos corresponde determinar si el Tribunal de Circuito de Apelaciones erró al resolver que tres cargos imputados a Juan Antonio Cortés Rivera por infracción al Art. 105 del Código Penal de Puerto Rico (actos lascivos), constituían una sola infracción a la ley en virtud de la figura de continuidad delictiva.

## I.

El Ministerio Público acusó a Juan Antonio Cortés Rivera de tres cargos de actos lascivos e impúdicos cometidos contra una menor de doce (12) años de edad. Art. 105 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4067. Los cargos especificaban hechos similares y las fechas en que fueron cometidos, según alega el Ministerio Público. El primer cargo señaló el 26 de abril de 1994 como la fecha exacta de la comisión de los actos delictivos.

El segundo y tercero especificaron las fechas aproximadas de "entre los meses de julio a septiembre de 1993" y "entre los meses de octubre a diciembre de 1993", respectivamente. Celebrado el juicio por Tribunal de Derecho, el foro sentenciador halló culpable a Cortés Rivera y lo sentenció a cumplir de forma consecutiva ocho (8) años de prisión por cada cargo, para un total de veinticuatro (24) años de prisión. Inconforme con esta determinación, Cortés Rivera apeló ante el Tribunal de Circuito de Apelaciones. Ese foro apelativo (Circuito Regional VII; Carolina-Fajardo), modificó la sentencia que le fue impuesta en instancia por entender que se había cometido un solo delito.[1] De este modo, el foro apelativo estimó que los tres cargos imputados a Cortés Rivera jurídicamente constituían un delito continuado cometido en pluralidad de acciones. Por ello, devolvió el caso al foro de instancia para que emitiera sentencia por una sola infracción al Art. 105 del Código Penal.

---

[1] **Notamos que la decisión recurrida ante nos fue incorrectamente titulada como Resolución. Lo cierto es que se trata de una sentencia, pues el foro apelativo adjudicó todas las controversias que le fueron planteadas en el recurso de apelación. Regla 43.1 de las de Procedimiento Civil vigentes; 32 L.P.R.A. Ap. II, R. 43.1.**

De esta determinación, el Ministerio Público acudió ante este Tribunal mediante recurso de certiorari imputándole al foro apelativo haber errado al resolver que los actos delictivos por los cuales fue procesado Cortés Rivera no pueden ser sancionados individualmente.

Vista la comparecencia del Procurador General, concedimos a Cortés Rivera un término de veinte (20) días para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia recurrida. El imputado así lo hizo. De tal modo, con la comparecencia de las partes y evaluados los argumentos de derecho presentados ante nos, resolvemos según lo intimado.

## II.

El delito continuo o continuado puede definirse como una pluralidad de actos que aisladamente pudieran concebirse como delitos independientes, pero que en conjunto se conciben como un delito único. Véanse, Santiago Mir Puig, Derecho Penal, Parte general 656 (4ta ed. 1996); Alfonso Arroyo de las Hieras, Manual de Derecho Penal 267 (1985); I Eugenio Cuello Calón, Derecho Penal vol. II, 687 (18va ed. 1981); José María Rodríguez Devesa, Derecho Penal Español 808 (8va ed. 1981); María T. Castiñeira, El delito continuado 15 (1977); II Federico Puig Peña, Derecho Penal 301 (1959).

En sus orígenes, esta figura jurídica fue elaborada para evitar la imposición de la pena de muerte al autor de tres o más hurtos. Código Penal Español Comentado, 202 (1990); José María Luzón Cuesta, Compendio de Derecho Penal, Parte General, 252 (1986). Aún hoy, para algunos constituye una figura jurídica que tiene el objetivo benévolo de atenuar la pena del imputado. Para otros, particularmente en la doctrina alemana, es una figura jurídica que encuentra su fundamento en necesidades prácticas, ya que mediante ella se superan dificultades probatorias, al ignorarse las fechas exactas de los distintos episodios que conforman el delito continuado, y al permitir eludir las reglas en torno al concurso

de delitos.[2] Antonio Quintano Ripolles, Curso de Derecho Penal 260 (1963); Gonzalo Quintero Olivares y Francisco Muñoz Conde, supra, a la pág. 106; Cuello Calón, supra, a la pág. 698.

En Pueblo v. Burgos, 75 D.P.R. 551 (1953), definimos el delito continuado como "una transacción o una serie de actos continuos puestos en movimiento por un solo impulso y operados por una sola fuerza no intermitente, no importa cuan largo sea el tiempo que pueda ocupar". Id., a la pág. 568. En esa ocasión, con apoyo en varios tratadistas y en jurisprudencia estadounidense, destacamos que procede una sola acusación cuando sólo hay un impulso entre la serie de actos involucrados, independientemente del tiempo transcurrido entre éstos. Por otro lado, afirmamos que proceden acusaciones separadas si se dan impulsos sucesivos de forma independiente, aún cuando esos impulsos sucesivos puedan converger en una corriente común de acción. Id.; véanse además, Pueblo v. Serrano Pagán, 85 D.P.R. 684 (1962) (operar una banca de bolita); Pueblo v. Lugo, 64 D.P.R. 554 (1945) (incumplimiento de la obligación alimenticia; modificado en otros extremos); Pueblo v. Meléndez Cartagena, 106 D.P.R. 388 (1977). Véase además, Dora Nevares–Muñiz, Derecho Penal Puertorriqueño 328 (3ra ed. 1995).

Recientemente, en Pueblo v. Carballosa Vázquez y otro, 130 D.P.R. 842 (1992), retomamos la discusión en torno a los delitos continuos y resolvimos que la acusación por infracción al Art. 212 del Código Penal (oferta de soborno) allí involucrada, comprendía un solo delito ya que,

> la serie de actos alegadamente realizados por los recurridos violentaron una misma disposición penal y estuvieron dirigidos a

---

**[2] Sobre este último aspecto se destaca que:**

> **El mecanismo de delito continuado es de por sí considerado por la doctrina como una *ficción* destinada a eludir las reglas concursales que el Código penal contiene, en especial la referente al concurso real homogéneo de delitos, así como el sistema de cuantías imperante en los delitos contra la propiedad antes de la Reforma de 1983. Por tanto, el delito continuado, acuñado jurisprudencialmente, ha venido comportando una *contrariedad formal* a las reglas de acumulación de penas en el concurso de delitos.**

**Gonzalo Quintero Olivares y Francisco Muñoz Conde, La Reforma Penal de 1983 106 (1983).**

alcanzar un mismo fin o designio criminal, aun cuando cada uno de estos actos, de haberse realizado aisladamente y de forma independiente, hubiesen podido ser juzgados como un delito distinto. Pueblo v. Carballosa Vázquez y otro, 130 D.P.R. a la pág. 856.

En su vertiente procesal, el delito continuado o continuo impide el procesamiento fragmentario. Dora Neváres, supra, a la pág. 330.

Ahora bien, en Pueblo v. Burgos, supra, aunque destacamos la importancia de la intención legislativa y de las palabras del estatuto involucrado para hacer una determinación de continuidad, reconocimos las dificultades que entraña establecer una regla fija que permita precisar cuándo un delito es continuo. Las dificultades se tornan más evidentes ante el hecho de que en nuestra jurisdicción, distinto a otras jurisdicciones, no existe una disposición que regule de forma específica esta figura.

En la doctrina civilista existen diversos esquemas que pretenden precisar las circunstancias bajo las cuales nos encontramos ante un delito continuado. Por un lado, se encuentran las teorías subjetivas, también conocidas como restrictivas, las cuales, en esencia, plantean que la continuidad proviene "de la intención unitaria del agente". Rodríguez Devesa, supra, a la pág. 811; véanse, María T. Castiñeira, supra, a las págs. 29-30; Puig Peña, supra, a las págs. 304-06. Esta es la tendencia prevaleciente en la doctrina italiana.

Por otro lado, se encuentran las teorías objetivas, favorecidas en la doctrina alemana, bajo las cuales, la continuidad se determina "sobre la base de las circunstancias que objetivamente concurren a la comisión del hecho" ya que quienes postulan estas teorías estiman que "la voluntad unitaria del autor es difícil de averiguar e irrelevante para el

Derecho".[3] Id. Una tercera vertiente ecléctica postula que es necesario examinar varios requisitos tanto objetivos como subjetivos.[4]

En Puerto Rico, conforme a nuestros previos pronunciamientos, prevalece la tendencia subjetiva, conforme a la cual es preciso examinar la intención del agente actor para determinar si en la serie de actos subsistió un único designio común. Con lo anterior en mente, examinemos los hechos del caso.

## II.

Un examen de la exposición estipulada de la prueba testifical que desfiló en el foro de instancia revela que, contrario a la apreciación del foro apelativo, los actos por los cuales Cortés Rivera fue procesado carecían del elemento de unidad de resolución o intención que en el pasado hemos concebido como imprescindible en los delitos continuados. El Tribunal de Circuito de Apelaciones, por su parte, enfatizó el hecho de que se trató de una misma víctima y que las fechas indicadas en dos de los cargos no pudieron ser precisadas. Sin embargo, en su análisis omitió evaluar si de la prueba se desprendía la unidad de intención o resolución en el imputado.

En cuanto a los hechos ocurridos el 26 de abril de 1994, la víctima declaró que ese día,

> el sospechoso salió del baño en toalla y fue al cuarto de ella. Le dice te voy a molestar y le empezó a hacer cosquilla. Le agarra las nalgas, le sube la falda, le baja los "panties" y le metió la lengua en la oreja. La acostó en la cama se le trepó encima. Se sacó el pene y se empezó a mover encima de ella. Tenía el pene sobre su parte genital. Luego se bajó, le dijo ya no te voy a molestar más. Después la lleva al cuarto de él y la arrodilla en la cama con la falda abajo y él se arrodilla y

---

[3] **Bajo el esquema subjetivo se ha señalado que es necesario examinar los siguientes elementos: (1) unidad de resolución en el sujeto activo; (2) unidad de disposición legal infringida; y (3) pluralidad de acciones. Bajo el esquema o sistema objetivo se examina si existe: (1) unidad de ocasión; (2) similitud del tipo; (3) unidad del bien jurídico lesionado y (4) homogeneidad en la ejecución. Puig Peña, _supra_, a las págs. 304-05.**

[4] **Debemos destacar que a pesar de estos distintos esquemas, parece existir consenso en la doctrina en que las normas sobre continuidad no les son aplicables a cierto tipo de delito por razón de la naturaleza de los bienes lesionados. Este es el caso de actividad delictiva que lesiona bienes de carácter personalísimo. _Véase_, Puig Peña, _supra_, a la pág. 303.**

pega su pene a la vulva de ella y se movía. Apéndice del Recurso de Certiorari, a la pág. 83.

En cuanto al acto cometido entre julio y septiembre de 1993, la exposición estipulada de la prueba oral señala que "el acusado ponía a la víctima a darle masajes a él de manera que ella quedaba encima de él arrodillada para que su vulva quedara encima de su pene. Luego él se sentaba encima de ella en la misma forma". Id. Similares hechos ocurrieron entre los meses de octubre y diciembre.

Esta prueba no revela que existiera unidad de intención en el imputado en la realización de los diversos actos por los cuales fue procesado. Por el contrario, aunque se trata de la misma víctima, las distintas formas en que ocurrieron los hechos, sugieren que se trata de impulsos sucesivos independientes, excluyentes de la aplicación de las normas sobre continuidad. Dicho de otro modo, se trata de hechos distintos, cometidos en períodos de tiempo sucesivos lo suficientemente concretos que permiten imputarle a Cortés Rivera la comisión de delitos distintos. Procede, por lo tanto, revocar la sentencia del Tribunal de Circuito de Apelaciones y reinstalar la emitida por el tribunal de instancia.

Se emitirá la correspondiente sentencia revocatoria.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico


    Recurrente


        v.                           CC-98-220        Certiorari


Juan Antonio Cortés Rivera


    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 28 de enero de 1999


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de certiorari solicitado, se revoca la sentenca emitida en el caso de epígrafe por el Tribunal de Circuito de Apelaciones (Circuito Regional VII, Carolina-Fajardo) y en su lugar se reinstala la sentencia emitida por el Tribunal de Primera Instancia.

      Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri concurrió sin opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo