EL PUEBLO DE PUERTO RICO, apelado, *v.* ENRIQUE FALCÓN NEGRÓN, acusado y apelante.

*Número:* CR-88-35 *Resuelto:* 17 de abril de 1990

*Rafael A. Díaz Díaz, Luz M. Ríos Rosario* y *Miguel Ortiz Miller,* abogados del apelante; *Jorge E. Pérez Díaz, Procurador General,* e *Iván F. Fuster, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

I

Enrique Falcón Negrón fue acusado, juzgado y convicto por el delito de robo. Art. 173 del Código Penal, 33 L.P.R.A. sec. 4279.(1) Al acusado se le impuso una pena de doce (12) años de reclusión y el pago de $112,000 en calidad de restitución. El juez denegó la moción por no plantear cuestiones fundamentales sobre fianza en apelación. El acusado apela ante nos y expone básicamente dos (2) cuestiones de derecho:

A. Erró el honorable tribunal de instancia al encontrar culpable al acusado con prueba insuficiente para establecer más allá de duda razonable la culpabilidad de éste.

___

(1) La acusación le imputaba haber cometido el delito en concierto y común acuerdo con Víctor Velázquez Carreras, quien luego se hizo testigo de cargo.

B. Erró el honorable tribunal de instancia al imponer una pena de restitución excesiva y más allá de los linderos estatutarios al efecto.

La convicción por el delito de robo está ampliamente sostenida por la prueba. Procede, sin embargo, modificar la sentencia para eliminar la pena de restitución impuesta por el tribunal.

## II

En su teoría al Jurado, el fiscal alegó que el aquí apelante fue el autor intelectual del robo contra un empleado de la Cooperativa de Cataño (en adelante Cooperativa) a quien le sustrajeron la cantidad de $200,000 en efectivo. El Sr. José E. Ortiz Negrón, supervisor de cajeros de la Cooperativa, declaró que conoce al acusado Falcón desde hace varios años debido a que éste visitaba a menudo a su ex esposa y a su hermana, quienes trabajaban en la Cooperativa.

El día de los hechos, entre las 8:40 A.M. y 9:00 A.M., el señor Ortiz vio al acusado en la Cooperativa. Más tarde, cuando se dirigía a una farmacia, lo vio hablando desde un teléfono público cerca de la Cooperativa. Luego de ir a la farmacia, el testigo cogió el cheque de $200,000 para ir al banco a cambiarlo. Cuando salió del banco con el maletín y el dinero en efectivo, un individuo con boina y gafas oscuras lo agredió, forcejearon y éste se llevó el maletín con el dinero. Un auto marca Suzuki recogió al individuo, aceleró y desapareció. El señor Ortiz pudo anotar el número de la tablilla del vehículo. El asalto ocurrió entre las 9:30 A.M. y 9:40 A.M. El testigo también manifestó que la Sra. Gladys Rosado, ex esposa del acusado, el día de los hechos le preguntó cuánto dinero iría a buscar al Royal Bank.

Miguel Alemán Carreras, coautor del robo, fue el testigo principal del caso. Acusó al señor Falcón de haberlo buscado para cometer el robo junto a su primo, Víctor Velázquez. El día de los hechos, Alemán se encontró con Falcón en la Plaza de Cataño. Falcón entró a la Cooperativa y le dijo que esperara a que él le avisara. Luego de varios minutos, salió de la Cooperativa y le

indicó que el señor Ortiz iba de la Cooperativa a la Farmacia Moscoso y de allí para el banco. El testigo, al ver al muchacho salir de la Cooperativa, se dirigió al lugar acordado donde esperaría a Velázquez, el primo. Luego de varios minutos, apareció el primo corriendo con el maletín en mano. Éste se metió al carro y se marcharon.

Alemán y Velázquez llamaron a Falcón a su trabajo. Se encontraron con él, se fueron a casa de una tía del testigo y allí repartieron el dinero. Falcón le dio $60,000 al primo y $30,000 al testigo. Luego de dividir el dinero, Alemán fue a una tienda y compró un equipo de música. Llamó a casa de su novia y ésta le indicó que los agentes lo estaban buscando por el asalto a la Cooperativa. Inmediatamente abandonó el auto en una carretera y lo reportó como robado y que lo habían secuestrado a él durante el robo. Después de varias horas de interrogatorio con los agentes, confesó la verdad de lo que había sucedido. A preguntas de la defensa contestó que el Fiscal no le había dado inmunidad y que lo podían meter preso en cualquier momento. También indicó que no vio a Falcón hablar por teléfono público cuando vigilaba al señor Ortiz al dirigirse éste a la Farmacia Moscoso.

El testigo Samuel Munich Vélez trabajaba para la Policía de Puerto Rico para el 3 de abril de 1987. Tuvo a su cargo la investigación del robo. Al llegar a la Cooperativa entrevistó al señor Ortiz. Éste le contó lo sucedido y le dio el número de la tablilla del automóvil involucrado en el atraco. También entrevistó a la señora Rosado y le preguntó por el paradero de su ex esposo. La señora Rosado se comunicó con el señor Falcón y éste compareció al Cuartel de Cataño entre las 10:00 P.M. y 10:30 P.M. Se le citó para saber el paradero de Miguel Alemán, Hijo. Falcón indicó que no lo había visto. El agente señaló que el padre de Miguel Alemán le indicó que Falcón, la noche anterior al robo, había pasado por su casa preguntando por su hijo. El agente Munich logró dar con Miguel Alemán, Hijo. Después de un rato y hechas las advertencias legales, Alemán declaró todo lo relacionado con el caso e indicó, a su vez, el lugar donde había abandonado el vehículo y el dinero.

Por la madrugada, el testigo fue a la residencia de Falcón y lo llevó a las oficinas del Comisionado de Investigaciones Criminales (C.I.C.) en Bayamón. El agente también declaró que hubo un acuerdo verbal entre la Fiscalía y el señor Alemán mediante el cual ·el fiscal le concedió inmunidad.

Esencialmente, esta fue la prueba traída por el Ministerio Público. La defensa presentó a varios testigos para establecer que Falcón se encontraba en su oficina el día del robo. Sin embargo, aunque los testimonios pudieron determinar que lo vieron en ciertos momentos específicos del día, ninguno pudo asegurar que el acusado se mantuvo todo el tiempo en su oficina y que no se movió de la misma durante todo el día.

El acusado plantea que en el testimonio del coautor existen contradicciones crasas que ameritan rechazarlo por ser el mismo indigno de crédito. No le asiste la razón.

Aun cuando existen algunas contradicciones, las mismas no son decisivas.(2) El resto del testimonio del coautor conecta al acusado con la comisión del delito.

Hemos establecido que los jueces de instancia y los jurados son quienes están en mejor posición de aquilatar la prueba. *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986); *Pueblo v. Cruz Granados*, 116 D.P.R. 3 (1984).

No se intervendrá en la apreciación de la prueba que haga el Jurado en ausencia de error manifiesto, prejuicio, parcia-

---

(2) El apelante señala las contradicciones siguientes:

a. El testigo expresó bajo juramento que el Ministerio Público no le había concedido inmunidad para testificar. De la declaración del agente Munich surge que existía un acuerdo verbal entre Alemán y el Ministerio Público.

b. En su testimonio Alemán dijo que Falcón sólo le había entregado $30,000. Sin embargo, cuando confiesa a la Policía, le entrega $38,000 como parte del robo.

c. El testigo dijo que cuando observó al señor Ortiz dirigirse a la farmacia no vio al señor Falcón hablando por el teléfono público.

d. Finalmente, Alemán expresó que Falcón llegó a casa de su tía de 11:30 P.M. a 12:00 M. y que se entregó a la Policía de 12:30 A.M. a 1:00 A.M. El apelante nos dice que el tiempo entre la reunión y la entrega es muy corto como para realizar la compra del equipo de música, abandonar el carro en Aguas Buenas y luego comunicarse con la Policía.

lidad o pasión. La apreciación de los jueces de instancia y de los jurados merece gran respeto y deferencia.

■ De igual forma, "'el hecho de que existan contradicciones en las declaraciones de un testigo, eso de por sí s[o]lo, no justifica el que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad más allá de duda razonable. No debe resolverse un caso por aquellos detalles que no van a la misma médula de la controversia'". (Cita omitida.) *Pueblo v. Martínez Meléndez*, 123 D.P.R. 620, 623–624 (1989). Véase *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287, 317 (1988). Esa es la situación en el caso ante nos. El juzgador tuvo ante sí la prueba y, luego de aquilatar la misma, entendió más allá de duda razonable que el acusado fue el culpable del robo.

El apelante trae a nuestra atención la Regla 156 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que dispone:(3)

El testimonio de un coautor será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al jurado instrucciones a esos efectos.

El apelante entiende que en vista de que se le confirió inmunidad al coautor y dadas las inconsistencias en su testimonio,

---

(3) Antes de la enmienda de 1974, la Regla 156 de Procedimiento Criminal disponía: "No procederá la convicción por la sola declaración de un cómplice a no ser ésta corroborada por alguna otra prueba que por sí misma, y sin tomar en consideración la declaración del cómplice, tienda a demostrar la relación del acusado con la comisión del delito. Esta corroboración no será suficiente si probare solamente la perpetración del delito o las circunstancias del mismo." 34 L.P.R.A. Ap. II (ed. de 1971).

No obstante, este Tribunal ya había vislumbrado la posibilidad de un cambio a dicha regla:

"Más aún, la tendencia actual es a descartar el requisito de esa regla anacrónica . . . pues el peligro señalado puede eliminarse mediante instrucciones adecuadas sobre el grado de confiabilidad del testimonio del cómplice, o sea, que debe considerarse con cautela, y así el juzgador, juez o jurado, juzgaría en cada caso el crédito que le mereciese la declaración." *Muñoz Sullivan v. Jefe Penitenciaría*, 90 D.P.R. 632, 634 (1964).

no debe tomarse el mismo en consideración. No le asiste la razón. Veamos.

La Regla 156 fue enmendada el 23 de julio de 1974. En la Exposición de Motivos de la Ley Núm. 208 de 23 de julio de 1974 la Legislatura manifestó que:

> El propósito de esta legislación es eliminar el requisito que establece la Regla 156 de Procedimiento Criminal sobre la necesidad de corroborar el testimonio del cómplice para que un acusado pueda ser convicto. Las circunstancias que dieron lugar a la formulación de la referida regla han desaparecido no existiendo razón al presente para considerar al cómplice dentro de una clase especial de testigos con un trato diferente al de otros testigos. 1974 Leyes de Puerto Rico 122–123.

La Legislatura consideró, a su vez, que se debe examinar el testimonio del coautor con desconfianza y cautela.

> Ante la posibilidad de que el testimonio del cómplice puede estar basado en una promesa de inmunidad, la medida establece que el testimonio del cómplice aunque suficiente por sí solo para lograr la convicción del acusado debe examinarse con desconfianza y cautela. Leyes de Puerto Rico, *supra*, pág. 123.

En variedad de ocasiones, la corte federal ha sostenido la constitucionalidad de utilizar el testimonio no corroborado de un coautor para una convicción criminal.

> This court has held, however, that "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction". *Jacobs v. Redman*, 616 F.2d 1251, 1255 (3er Cir. 1980).
>
> There is no absolute rule of law preventing convictions on the testimony of the accomplices if juries believe them. Véase *Caminetti v. United States*, 242 U.S. 470, 492 (1917).
>
> It is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice, if the testimony is not "incredible or unsubstantial on its face". . . . This is true even where the accomplice hopes to receive lenient treatment. *Darden v. United States*, 405 F.2d 1054, 1056 (9no Cir. 1969).

■ También se ha resuelto que el mero hecho de que se le conceda inmunidad o mejor trato al coautor no lo descualifica

como testigo. *DeRosier v. United States*, 407 F.2d 959, 962 (8vo Cir. 1969). Corresponde al juzgador examinar con cuidado y cautela el testimonio del coautor y decidir si el mismo es digno de credibilidad. *United States v. DeLarosa*, 450 F.2d 1057, 1060 (3er Cir. 1971).

En el caso de autos el Jurado tuvo la oportunidad de examinar el testimonio del coautor Miguel Alemán. No se invoca ante este Tribunal que el juez de instancia haya cometido algún error al impartir las instrucciones al Jurado con relación al testimonio del coautor.

En vista de que las contradicciones del testigo no fueron crasas ni decisivas como para eliminar su testimonio, correspondía al Jurado aquilatar y juzgar el crédito que merecía el testimonio del coautor.

## III

El apelante alega como segundo error que el tribunal le impuso una pena de restitución excesiva. No tenemos que entrar a discutir si la penalidad impuesta como restitución es excesiva, dado que la misma no procede como penalidad en el delito de robo. Veamos.

La Ley Núm. 111 de 4 de junio de 1980 (33 L.P.R.A. sec. 3191 *et seq.*) adicionó a través de los nuevos Arts. 49A y 54A, 33 L.P.R.A. secs. 3212 y 3245a, la pena de restitución a las penas ya establecidas mediante el Art. 38 del Código Penal de 1974 (33 L.P.R.A. sec. 3191). El Legislador incluyó esta disposición en la parte general del Código Penal y junto con ésta aprobó la Ley Núm. 101 de 4 de junio de 1980 (33 L.P.R.A. sec. 3005) para incluir la pena de restitución para algunos delitos específicos del código.[4] El delito de robo no se encuentra dentro de los delitos que el legislador dispuso que tuvieran la pena de restitución. El

---

[4] Dada la incertidumbre surgida en los tribunales de instancia en cuanto a aplicar la pena de restitución a los casos bajo la ley especial de Vehículos y Tránsito, el Legislador añadió, mediante la Ley Núm. 141 aprobada el 27 de marzo de, 1987, el pago de daños a

principio de legalidad exige que no se impongan penas o medidas de seguridad que la ley no hubiese previamente establecido.

 Resolvemos que la pena de restitución es aplicable sólo en aquellos delitos a los cuales la Asamblea Legislativa específicamente dispuso que se añadiera. Para más detalles sobre este particular, véase R.A. Guzmán, *La pena de restitución en el Derecho puertorriqueño*, LIV Rev. Jur. U.P.R. 65, 70 (1985), que propone: "[L]a pena de restitución es aplicable sólo a aquellos delitos establecidos en la parte específica del Código Penal, si es que el legislador ha impuesto *expresamente* tal pena en los artículos correspondientes." Véanse, además: M. Fernós, *La Restitución: Tres Interpretaciones Judiciales*, Año 4 (Núm. 1) Boletín Judicial 39–41 (enero-marzo 1982); D. Neváres-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 10.2.3, pág. 319.

Por los fundamentos expresados, *no procede la pena de restitución impuesta al apelante en el caso de autos. Se modificará la sentencia apelada para eliminar la pena de restitución impuesta y, así modificada, se confirmará la misma.*

---

la parte perjudicada por daños y pérdidas a la propiedad. Esto abunda sobre la posición de que la pena de restitución tiene que establecerse específicamente y no en forma general.