TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el acusado-apelante, Bernardo Pérez Velázquez. Solicita que revoquemos una sentencia dictada el 2 de julio de 2001, por el Tribunal de Primera Instancia, Sala de Río Grande (Hon. Felipe Rivera Colón, Juez). En la referida sentencia se declaró culpable al acusado-apelante, Pérez Velázquez, de infracción al Artículo 95 del Código Penal (33 L.P.R.A. see. 4032) y se le impuso el pago de $200.00 de multa más las costas correspondientes. Por los fundamentos que expondremos a continuación, confirmamos la sentencia apelada.
*1157 I
El 4 de junio de 2001, Bernardo Pérez Velázquez fue declarado culpable de haber cometido el delito de agresión agravada menos grave, tipificado en el Artículo 95 del Código Penal, 33 L.P.R.A. see. 4032. A esos efectos, el Tribunal de Primera Instancia, Sala de Río Grande, lo condenó al pago de $200.00 de multa más las costas correspondientes.
Inconforme con la sentencia dictada, el 5 de julio de 2001, Pérez Velázquez compareció ante nos mediante recurso de apelación. Alega que erró el Tribunal de Primera Instancia al no concederle el beneficio de la duda razonable. En segundo lugar, alega que se le privó del derecho constitucionál a una adecuada representación legal.
Contando con los alegatos del acusado-apelante y del Procurador General, con el beneficio de la exposición narrativa estipulada de la prueba y de los autos originales, resolvemos.
II
La prueba de cargo en este caso consistió del testimonio vertido por Juan Ortiz Ortiz. Esta persona declaró que es chofer de equipo pesado y que para la fecha del 18 de octubre de 2001, “llegó a la cantera de Dimas de Jesús a buscar un viaje de relleno”. E.N.P., a la pág. 2. Testificó que cuando llegó al lugar, estaban presentes Dimas de Jesús “y el señor Bernardo”, a quien también se le estaba cargando un camión. Id. Dijo el testigo que Bernardo Pérez Velázquez (el acusado-apelante), estaba hablando con Dimas de Jesús, quien es el propietario de las máquinas y el encargado de extraer el material de relleno.
Acto seguido, Ortiz Ortiz declaró que cuando él llegó, el acusado Pérez Velázquez le dijo: “mira guaraguao”. Id. Según Ortiz Ortiz, “guaraguao” es el apodo de una persona con la que el acusado Pérez Velázquez había tenido problemas anteriormente. Siguió relatando este testigo que fue donde el acusado Pérez Velázquez y le preguntó “por qué razón lo comparaba con “guaraguao”. Id. De acuerdo al testimonio de Ortiz Ortiz, el acusado Pérez Velázquez le contestó que “guaraguao había estado preso, que no valía nada y que le habían comido el culo”. Id.
Declaró Ortiz Ortiz que le contestó lo siguiente al acusado Pérez Velázquez: “que él nunca había estado preso y no le habían comido nunca el culo y que podía ser hasta más hombre que el acusado ”. Id. Según Ortiz Ortiz, el acusado Pérez Velázquez le contestó “que le trajera a la mujer suya, y que ahí iban a pelear los dos”. Id.
De acuerdo al testimonio de Ortiz Ortiz, en ese momento “Don Dimas de Jesús se metió en medio de los dos” y a él lo halaron para un lado y al acusado Pérez Velázquez “se lo llevaron para la parte del frente”. Id.
Continuó declarando este testigo que “de momento”, cuando él estaba “allá abajo hablando con el operador de la máquina y el señor Dimas de Jesús”, oyó que le decían “cuidado menor” y que cuando miró, vio que el acusado Pérez Velázquez “venía con una varilla”. Id. Dijo que sólo le dio tiempo de poner el brazo y “se le partió el hueso”. E.N.P., a la pág. 3. Declaró que posteriormente lo llevaron al hospital “donde le sacaron placas, lo suturaron y le enyesaron el brazo Id.
A preguntas del Fiscal, Ortiz Ortiz testificó que el acusado Pérez Velázquez “venía con una varilla” para darle por la cabeza y que si no hubiese puesto el brazo “le hubiese partido la cabeza con la varilla ”. Id.
Posteriormente, Ortiz Ortiz fue contrainterrogado por la defensa del acusado Pérez Velázquez. Contestó en la negativa cuando se le preguntó si había sido él quien le dijo al acusado Pérez Velázquez que era “un guapito, que él había estado preso y que nadie lo iba a atropellar”. E.N.P., a la pág. 4. A preguntas de la defensa de si había sido él (Ortiz Ortiz) quien le dijo al acusado Pérez Velázquez “tráigame a su esposa y yo le voy a *1158 demostrar que soy más hombre que usted”, Ortiz Ortiz “comenzó a reírse y dijo que no, porque no tiene la necesidad, que no lo había dicho”. Id.
Por otro lado, la defensa le preguntó a Ortiz Ortiz si ante la alegada actuación del acusado Pérez Velázquez, él no había hecho absolutamente nada. El testigo Ortiz Ortiz respondió en la afirmativa. Id. Declaró también a preguntas de la defensa que “allí sólo estaba Don Dimas, el operador de la máquina, el acusado y él”. E.N.P., a la pág. 5. Contestó también que no le había arrojado una piedra al acusado Pérez Velázquez.
La defensa también le preguntó a Ortiz Ortiz si “luego del cruce de palabras ofensivas se dirigió al acusado con algo en la mano”. Id. El testigo contestó que no. Luego volvió a negar que hubiese tenido algo en la mano.
El abogado de defensa también le preguntó al testigo Ortiz Ortiz si en ese incidente el acusado Pérez Velázquez resulto herido. Ortiz Ortiz respondió que no. Finalmente se le preguntó al testigo si en la actualidad tenía querellas ante la Comisión de Servicio Público por incidentes de esa naturaleza, a lo que tambiénn contestó en la negativa.
Con el testimonio de Ortiz Ortiz, el Ministerio Público dio por sometido el caso.
Por su parte, la defensa trajo como testigo al agente Alberto Rosa Rivera. Declaró que estuvo a cargo de investigar la querella en este caso. Testificó además que “llamó al sospechoso para entrevistarlo quince días después de haber recibido la querella y éste le dio su versión”. E.N.P., a la pág. 6. Declaró que “el sospechoso le dijo que tuvo una breve discusión con el señor Juan Ortiz y que éste lo había agredido a él en primer lugar; que Ortiz lo agredió y luego él agredió a Ortiz”. Id.
Por otro lado, el agente Rosa Rivera declaró que fue al área de los hechos y se entrevistó con varias personas, pero que éstos le habían dicho que “como conocen a ambos (refiriéndose al acusado y al perjudicado), no querían involucrarse”. E.N.P., a la pág. 6. Indicó además que Ortiz Ortiz llegó el 8 de septiembre de 2000 con una herida en el brazo, y le indicó que el acusado Pérez Velázquez lo agredió con un objeto contundente tipo varilla o tubo; y que cuando se cubrió, recibió el golpe en el brazo.
Dijo también el agente que “Ortiz le había indicado que llegó al área de carga a cargar el “truck” y Bernardo (el acusado Pérez Velázquez) lo confundió con otra persona y se suscitó la discusión entre ellos, que terminó con una agresión”. Id; énfasis suplido.
El tribunal excusó al agente y preguntó a la defensa si tenía algún testigo. El abogado de la defensa indicó que “el mejor curso a seguir era dar por sometido el caso sin presentar prueba”. Id; énfasis suplido.
III
El Artículo II, Sección 11 de la Constitución de Puerto Rico, dispone, en parte, que en “todos los procesos criminales, el acusado disfrutará del derecho...a tener asistencia de abogado”.
La anterior disposición constitucional le garantiza a todo imputado de delito una adecuada y efectiva asistencia de abogado. Pueblo v. López Guzmán, 131 D.P.R. 867, 878 (1992). Sin embargo, este principio está sujeto a una serie de consideraciones. Como resolviera el Tribunal Supremo en Pueblo v. Morales Suárez, 117 D.P.R. 497, 501 (1986), existe una fuerte presunción de que la conducta del abogado defensor está comprendida dentro del amplio ámbito de una razonable asistencia legal.
Por esa razón, recae sobre el apelante el peso de la prueba de su indefensión por incompetencia del abogado. A su vez, la incompetencia enervante de la asistencia legal a que tiene derecho el acusado, ha de ser de grado extremo, causante de perjuicio sustancial, al punto de que sostenga la probabilidad de que de no haber *1159 incidido, el resultado del juicio hubiera sido distinto. Id., a la pág. 500; Pueblo v. López Guzmán, supra, a la pág. 880.
El otro criterio para adjudicar una reclamación de falta de efectividad en la defensa, debe ser si la actuación del abogado vulneró de tal modo el adecuado funcionamiento del sistema adversativo que no pueda decirse que el juicio tuvo un resultado justo. Pueblo v. Ríos Maldonado, 132 D.P.R. 146, 164 (1992); Pueblo v. López Guzmán, supra.
También se ha resuelto que las equivocaciones o errores del abogado de la defensa no pueden invocarse en apelación como fundamento para revocar, en ausencia de mala fe, fraude, incapacidad física y mental, o de clara, indiscutible y grave incompetencia profesional de dicho abogado en el juicio. Pueblo v. Del Valle, 91 D.P.R. 174, 182 (1964); Marrero Laffose v. Marshal, Tribl. Superior, 89 D.P.R. 564 (1963).
En cuanto al segundo señalamiento de error, el acusado-apelante, Pérez Velázquez, argumenta que no contó con una adecuada representación legal, por lo que se le violó un derecho reconocido constitucionaímente. Al respecto, el acusado-apelante, Pérez Velázquez, alega que su abogado estipuló pmeba perjudicial consistente de unos exámenes médicos de fecha distinta a los hechos (19 y 25 de septiembre de 2000). A esos efectos, argumenta que el abogado no se dio a la tarea de entrevistar al médico, para así determinar si los exámenes médicos se relacionaban a los hechos alegados y corroborar así la declaración del perjudicado.
El acusado-apelante, Pérez Velázquez, también alega que su representación legal no realizó descubrimiento de prueba, a pesar de que conocía sobre la existencia de testigos presenciales que fueron entrevistados por el agente interventor. Dice el acusado-apelante que “el abogado, en un mínimo de despliegue de diligencia para con su cliente, debió entrevistar a esos testigos y solicitar su citación compulsoria al juicio". Alegato del Apelante, a la pág. 7. Acto seguido, el acusado-apelante, Pérez Velázquez, dice que “argüiblemente, existía la posibilidad de que esta prueba no fuera del todo beneficiosa al apelante”, pero “la única forma de corroborar el contenido de esos testimonios hubiese sido entrevistándolos y solicitando su citación al Juicio, lo cual no se hizo ”. Id., énfasis suplido.
Partiendo de esta última premisa, no podemos adjudicar una falta de representación legal adecuada cuando no se nos ha demostrado que el resultado del juicio hubiese sido distinto al que finalmente recayó, si dichos testigos hubiesen sido presentados. El propio acusado-apelante, Pérez Velázquez admite que se puede argüir que el testimonio de dichas personas no le hubiese sido favorable.
De otro lado, el propio agente investigador presentado por la defensa testificó que los testigos presenciales entrevistados por él no querían involucrarse en el caso, y tampoco sabemos si el abogado defensor no se dio realmente a la tarea de entrevistar a esos testigos, aunque le expresaron su falta de disponibilidad al agente. Sólo contamos con meras alegaciones por parte del acusado-apelante a esos efectos. Se necesita más que eso para derrotar la presunción que le asiste al abogado.
A ,raíz de lo anterior, es obvio que carecemos de los elementos de juicio para decir que la falta de otros testigos constituyó un error u omisión que afectó el derecho del acusado-apelante, Pérez Velázquez, a tener el beneficio de una representación legal adecuada.
Es importante destacar también que de la exposición narrativa estipulada de la prueba se desprenden cuatro páginas del contrainterrogatorio efectuado por el abogado de defensa al testigo Ortiz Ortiz. Durante ese contrainterrogatorio, el abogado realizó una serie de preguntas dirigidas a que Ortiz Ortiz contestara si había sido él quien comenzó el altercado, entre otras preguntas. Es decir, el abogado trató de minar la credibilidad del testigo. Posteriormente, el abogado decidió someter el caso luego de interrogar al agente investigador, porque para él “ese era el mejor curso a seguir”. En suma, se realizó un contrainterrogatorio al perjudicado y a pesar de *1160 que no se presentaron más testigos de defensa, no se nos han dado bases suficientes para intervenir con la estrategia de litigación del abogado de defensa de no presentar más testigos, ni mucho menos para decir que esa decisión fue la causa del resultado adverso para el acusado-apelante, Pérez Velázquez.
Por otro lado, el acusado-apelante, Pérez Velázquez, nos dice que el abogado de defensa no fue diligente porque no entrevistó al médico del perjudicado. Estas también son meras alegaciones del acusado-apelante, Pérez Velázquez. No nos consta que el abogado no haya llevado a cabo esa tarea, así como tampoco nos consta que el testimonio de dicho médico hubiese sido suficiente para cambiar la disposición final del caso. Tampoco se nos ha probado que la estipulación de unos expedientes médicos realizados varios días después de los hechos, fue un elemento decisivo al momento de adjudicarse el caso por el tribunal.
Al analizar en conjunto la argumentación del acusado-apelante, Pérez Velázquez, llegamos a la conclusión de que éste no logró rebatir la fuerte presunción de que la conducta de su abogado defensor estuvo comprendida dentro del ámbito de una asistencia legal razonable. No se nos ha persuadido dé que si no hubiera sido por la alegada “ineficiencia ” del abogado, el resultado del juicio hubiera sido distinto. Es decir, no se nos ha demostrado que la actuación del abogado defensor en este caso fuera una indiscutiblemente inadecuada y constitutiva de grave incompetencia profesional. El acusado-apelante, Pérez Velázquez, contó con representación legal y con un testigo presentado por ésta.
En ausencia de prueba sobre mala fe, fraude, incapacidad física y mental, o de clara, indiscutible y grave incompetencia profesional por parte del abogado, resolvemos que el segundo señalamiento de error no fue cometido.
IV
Aclarado lo anterior, pasamos entonces a atender el primer señalamiento de error. Aduce el acusado-apelante, Pérez Velázquez, que no se logró probar su culpabilidad más allá de duda razonable.
El Artículo II, Sección 11, de la Constitución de Puerto Rico consagra la presunción de inocencia como uno de los derechos fundamentales que asiste a todo acusado. Por ello, la Regla 110 de Procedimiento Criminal dispone que “[e]n todo procedimiento criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad se le absolverá... ”.
Este mandato constitucional exige que toda convicción esté sostenida por evidencia que “además de suficiente, [sea] satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Esa insatisfacción con la prueba es lo que se conoce como duda razonable y fundada”. Pueblo v. Feliciano Rodríguez, Opinión de 29 de febrero de 2000, 2000 J.T.S. 47. Véase también, Pueblo v. Rivero Diodonet, 121 D.P.R. 454 (1988).
Sin embargo, lo anterior no significa “que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón. ” Pueblo v. Rosario Reyes, 138 D.P.R. 591, 598 (1995). Véase además, Pueblo v. Pagán, Ortiz, 130 D.P.R. 470, 480 (1992); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985).
Al evaluar si se probó la culpabilidad del acusado más allá de duda razonable, los tribunales apelativos concederán gran deferencia al juzgador de primera instancia. Pueblo v. Rodríguez Román, 128 D.P.R. 121, 131 (1991). Ello obedece a que el juzgador de los hechos es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical, ya que fue él quien oyó y vio declarar a los testigos. Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987); Pueblo v. Cabán Torres, 117 D.P.R. 645, 654 (1986).
*1161 De otra parte, el Tribunal Supremo ha resuelto reiteradamente que “basta la evidencia directa de un testigo que le merezca al juzgador entero crédito para probar cualquier hecho, salvo, claro está, que por ley se disponga otra cosa”. Regla 10(d) de Evidencia, 32 L.P.R.A. Ap. IV; Pueblo v. Chévere Heredia, 139 D.P.R. 1, 15; Pueblo v. Rodríguez Román, supra; Pueblo v. Acevedo Quiñones, 100 D.P.R. 894, 899 (1972).
Es norma reiterada que los jueces de instancia y los jurados son quienes están en mejor posición de aquilatar la prueba. Pueblo v. Falcón Negrón, 126 D.P.R. 75, 79 (1990); Pueblo v. Miranda Ortiz, 117 D.P.R. 188, 191 (1986). Por lo tanto, no se intervendrá en la apreciación de la prueba que haga el jurado en ausencia de error manifiesto, prejuicio, parcialidad o pasión. Pueblo v. Irizarry Irizarry, Opinión de 10 de mayo de 2002, 2002 J.T.S. 68; Pueblo v. Maysonave, 129 D.P.R. 49 (1991); Pueblo v. Lebrón González, 113 D.P.R. 81, 105 (1982). Sólo ante la presencia de esos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal revisor habrá de intervenir con la apreciación efectuada. Pueblo v. Irizarry Irizarry, supra, a la pág. 1110.
Como se desprende de la exposición narrativa de la prueba, el tribunal sentenciador tuvo la oportunidad de aquilatar el testimonio brindado por el testigo Ortiz Ortiz a preguntas del Ministerio Público, así como su testimonio durante el contrainterrogatorio realizado por el abogado de defensa. Además, el tribunal tuvo el beneficio del testimonio del agente investigador del caso, quien brindó la versión de los hechos que el acusado-apelante, Pérez Velázquez, le diera durante la investigación, es decir, “que fue Ortiz Ortiz quien agredió a Pérez Velázquez en primer lugar, y luego de ello Pérez Velázquez agredió a Ortiz Ortiz”. Ver E.N.P., a la pág. 6. .
Uno de los argumentos del acusado-apelante, Pérez Velázquez, es que Ortiz Ortiz le dijo al agente investigador que hubo una discusión entre ellos, y que luego, contradictoriamente, testificó durante la vista que “fue el apelante quien en todo momento lo ofendió y luego gratuitamente lo golpeó en el brazo”. Alegato del Apelante, a la pág. 5. Al examinar la prueba, no creemos que haya contradicción o inconsistencia alguna entre ambas declaraciones, máxime cuando del propio testimonio de Ortiz Ortiz en la vista, se desprende que sí hubo un intercambio de palabras fuertes entre ambos, por lo que “Don Dimas se metió en medio de los dos y al testigo lo jalaron para un lado y al acusado se lo llevaron para la parte del frente”. E.N.P., a la pág. 2.
Al acusado-apelante, Pérez Velázquez, también le llama la atención que el agente investigador haya dicho que el mismo día de los hechos Ortiz Ortiz se presentó ante él con una “herida en el brazo”. Lo cuestionable para el acusado-apelante es que el agente no dijera haber visto a Ortiz Ortiz enyesado. No vemos la importancia de este detalle ni su peso para revocar la sentencia apelada. Los vocablos “enyesado” o “herido” ciertamente describen la condición de una extremidad que está lastimada. En ese sentido, los testimonios de Ortiz Ortiz y del agente Rosa Rivera no son mutuamente excluyentes y más aún, tuvieron la oportunidad de ser aquilatados por el tribunal sentenciador, quien les dio el peso que estimó pertinente.
Por último, el acusado-apelante, Pérez Velázquez, dice que el testimonio de Ortiz Ortiz (al decir que no había comenzado la discusión ni las ofensas) es increíble y contradictorio con el testimonio del agente investigador. Tampoco le asiste la razón.
De más está decir que el tribunal sentenciador, luego de aquilatar los testimonios, le dio entera credibilidad a lo declarado por Ortiz Ortiz. Al analizar la totalidad de la exposición narrativa estipulada de la prueba, no creemos que los hechos declarados por Ortiz Ortiz sean increíbles o improbables o estén en abierta contradicción con lo declarado por el agente Rosa Rivera. Como expusimos anteriormente, la evidencia directa de un testigo que le merezca al juzgador entero crédito, basta para probar cualquier hecho. Es por esta razón que en ausencia de prueba de pasión, prejuicio, parcialidad o error manifiesto, estamos impedidos de intervenir con la apreciación que de la prueba hiciera el Tribunal de Primera Instancia.
*1162 y
Por los fundamentos antes expuestos, confirmamos la sentencia apelada.
Así lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIO 2003 DTA 68
1. Esta fecha a todas luces es un error. De la Denuncia Jurada que dio paso a este proceso penal, se desprende que los hechos alegados en la misma ocurrieron el 8 de septiembre de 2000. Autos originales, a la pág. 1. Así también se reconoce en la introducción de la exposición narrativa estipulada de la prueba. E.N.P., a la pág. 1.