*204 Opinión disiente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la cual se unen el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
La controversia ante este Tribunal requería que evaluá-ramos si se justifica el cierre de la sala durante el testimo-nio de un agente encubierto durante la vista preliminar cuando lo único que se demostró fue que el agente continúa labores como encubierto. Por tratarse de un derecho de rango constitucional, estimo que se debe probar que existe un riesgo particular o real a la vida o seguridad del agente encubierto y que el cierre de la sala es la medida necesaria para salvaguardar ese interés. Por entender que el camino que el Tribunal traza hoy socava el derecho fundamental a un juicio público, disiento.
Repasemos los hechos que suscitaron la presente controversia.
I
El 14 de diciembre de 2009, el Tribunal de Primera Ins-tancia encontró causa probable para arresto contra el señor Rolando Elicier Díaz por infracciones a los Artículos 5.01, 5.04, 5.07, 5.10 y 6.01 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sees. 458, 458c, 458f, 458i y 459. Pautada la fecha de la vista preliminar, el Ministerio Público presentó una Moción Solicitando Vista Preliminar en Privado al Amparo de la Regla 23(c) de las de Procedimiento Criminal. En es-pecífico, solicitó que se limitara el acceso al público durante el testimonio del agente encubierto 08NAI29, ya que pre-suntamente éste continuaba trabajando como agente encu-bierto en la Región Judicial de Caguas.
El foro primario celebró la vista de necesidad correspondiente. El Ministerio Público presentó el testimo- *205 nio del agente Julio A. Báez Nieves, quien era el agente contacto del agente encubierto al momento de éste recopi-lar la prueba para procesar a Elicier Díaz. Finalizado el testimonio del agente Báez Nieves, el foro primario declaró “con lugar” la solicitud del Ministerio Público, por lo que ordenó que el testimonio del agente encubierto se presen-tara en privado cuando se celebrara la vista preliminar. La defensa del Sr. Elicier Díaz solicitó reconsideración del dic-tamen emitido. El foro primario emitió una resolución en la que acogió el planteamiento de la defensa y declaró “no ha lugar” la petición del Ministerio Público.
En su resolución, el foro primario señaló que, de la prueba presentada en la vista, solamente se puede concluir que el agente aún realiza labores como encubierto. Hizo constar que no se demostró que las investigaciones en las que el agente trabaja actualmente se llevan a cabo en la misma región donde ocurrieron los hechos imputados, que haya alguna relación entre el testimonio a ofrecer y las investigaciones actuales, que haya recibido alguna ame-naza o que su vida se encuentre en peligro por la investi-gación o que vaya a estarlo si presta testimonio. Añadió que el Ministerio Público no tomó medidas particulares para proteger la identidad del agente y que se incluyó su número de placa y su nombre real en las denuncias. En fin, el Tribunal de Primera Instancia concluyó que no se prestó evidencia suficiente para justificar el cierre de la sala du-rante el testimonio del agente encubierto en la vista preliminar.
El foro primario también apuntó que era consciente de que los detalles de las investigaciones que podría estar rea-lizando actualmente el agente 08NAI29 no podían ser re-velados, pero opinó que el Ministerio Público sí podía —de forma general— poner al tribunal en posición de determi-nar que en el curso y en la protección de las mismas, la seguridad del agente corría peligro de modo que fuera ne-cesaria la solicitud de cierre. Igualmente, determinó que, *206 aunque no compartía el argumento de la defensa de que incluir el nombre y número de placa verdadero del agente en las denuncias presentadas revelaban necesariamente su identidad, es prueba de una medida de seguridad que el Estado no tomó para proteger la identidad del agente.
Inconforme con la determinación del Tribunal de Pri-mera Instancia, el Ministerio Público acudió al Tribunal de Apelaciones mediante auto de certiorari. Dicho foro revocó la determinación del foro primario. Determinó que en la vista de necesidad, el Ministerio Público probó que el agente encubierto continuaba en funciones. Añadió que en circunstancias en que el agente se encuentra en funciones, no es necesario demostrar que éste teme por su vida o que su seguridad física o emocional está en peligro, ya que ello es inherente a la función que ejerce. Además, indicó que el Ministerio Público sólo solicitó la exclusión del público du-rante el testimonio del agente encubierto, lo cual cumple con las directrices de este Tribunal en cuanto a que el cie-rre de la vista no sea más amplio de lo necesario. El foro a quo expresó que aunque el cierre parcial de la vista preli-minar menoscaba el derecho del acusado a juicio público, ello no incide radicalmente en otras garantías constitucio-nales como el derecho a un juicio justo e imparcial, la pre-sunción de inocencia y el debido proceso de ley.
De esta sentencia, el Sr. Elicier Díaz acudió ante este foro mediante certiorari y moción de solicitud de paraliza-ción de los procedimientos en auxilio de jurisdicción. En su recurso, el peticionario aduce que el Tribunal de Apelacio-nes erró al revocar al Tribunal de Primera Instancia, pues no se cumplió con los factores esbozados en Pueblo v. Pepín Cortés y otros, 173 D.P.R. 968 (2008), por lo que se debió denegar la solicitud del Ministerio Público.
Examinado el recurso, el 4 de junio de 2010 paralizamos los procedimientos en el foro primario y le ordenamos a la Procuradora General que mostrara causa por la cual no debíamos expedirlo y revocar la sentencia del Tribunal de *207 Apelaciones. La Procuradora General compareció en cum-plimiento de nuestra orden y alegó, por vez primera, que el agente encubierto fue amenazado de muerte mientras se procesaban otros sujetos cuyos casos investigó el mismo agente.
II
La Opinión del Tribunal correctamente reconoce que, por versar este caso sobre un derecho fundamental, la li-mitación a ese derecho se debe evaluar rigurosamente, caso a caso. Sin embargo, al aplicar esta norma a los he-chos del caso, desvirtúa lo preceptuado en Pueblo v. Pepín Cortés y otros, ante, respecto al análisis que el Tribunal de Primera Instancia debe hacer al determinar si se concede el cierre de sala durante el testimonio del agente encubierto. Ello es así, pues sugiere que una vez se cumple con demostrar que hay un interés apremiante, el análisis se dirige a la proporción racional entre la amplitud del cierre solicitado y la gravedad del posible peijuicio. Ello, sin duda, tiene el efecto de flexibilizar el estándar reque-rido por exigencia constitucional.
Ciertamente, cuando un agente ejerce funciones de en-cubierto existen intereses apremiantes que el Estado debe salvaguardar: la vida y la seguridad del agente y la inte-gridad de las investigaciones en curso. Sin embargo, ello no es suficiente para restringir el derecho a juicio público. No basta con probar que el testigo aún funge como agente encubierto. Es necesario que los hechos del caso demues-tren que el testimonio que ofrece en corte abierta el agente encubierto pondría en riesgo alguno de estos intereses. Probar que el testigo aún funge como agente encubierto no justifica per se que se limite el acceso del público a la vista preliminar. Así lo resolvimos en Pueblo v. Pepín Cortés y otros, ante. En la medida que sugiere que es razonable cerrar la sala cada vez que va a testificar un agente encu- *208 bierto, el análisis de la opinión choca con lo decidido en este precedente.
En Pueblo v. Pepín Cortés y otros, ante, sostuvimos que toda solicitud de cierre de la vista preliminar que haga el Ministerio Público se debe evaluar restrictivamente a favor de su apertura, utilizando para ello un escrutinio estricto. Así, se requiere demostrar que la exclusión solici-tada es necesaria para salvaguardar un interés apre-miante y que esa medida está estrechamente diseñada para proteger ese interés. Citando al Tribunal Supremo de Estados Unidos en Waller v. Georgia, 467 U.S. 39 (1984), adoptamos los siguientes requisitos para evaluar una soli-citud de esta índole: (1) la parte que interese el cierre de la vista deberá exponer un interés apremiante; (2) el cierre no será más amplio que lo necesario para proteger ese in-terés; (3) el tribunal deberá considerar alternativas razo-nables al cierre, y (4) el tribunal deberá realizar determi-naciones adecuadas para sostener el cierre. Pueblo v. Pepín Cortés y otros, ante, págs. 986-987.
Resolvimos, además, que ante una solicitud de cierre de la vista preliminar o del juicio durante el testimonio de un agente encubierto, el Tribunal está obligado a celebrar una vista de necesidad en la cual se tomarán en consideración los siguientes factores para determinar si ésta se concede o no: (1) si el agente continúa trabajando en investigaciones de esa naturaleza; (2) si continúa trabajando en casos o investigaciones relacionadas al caso objeto de la vista de necesidad; (3) si su identidad ha sido revelada; (4) las me-didas o precauciones que ha tomado el Estado para preser-var la identidad o seguridad del agente; (5) si el agente ha recibido amenazas, y (6) si el agente teme por su vida o su seguridad física o emocional o la de su familia. Pueblo v. Pepín Cortés y otros, ante, pág. 988.
Al exponer los factores antes enunciados, rechazamos el lenguaje de la Regla 23(c) de Procedimiento Criminal que establecía una exclusión automática del público de la vista *209 preliminar —a pedido del Ministerio Público— cuando se interesara prestar testimonio de un agente encubierto que aún se encontrara en funciones. Véase Regla 23(c) de Pro-cedimiento Criminal, 34 L.P.R.A. Ap. II. Indicamos que no cabe duda de que la posibilidad de un decreto automático que ordene el cierre de la vista preliminar al amparo de la Regla 23(c) de Procedimiento Criminal, supra, no encuen-tra apoyo en nuestro ordenamiento constitucional. Pueblo v. Pepín Cortés y otros, ante, pág. 987.
Conforme con lo anterior, el Ministerio Público tiene la carga de probar en la vista de necesidad correspondiente que existe un interés apremiante del Estado en celebrar la vista preliminar en ausencia de público, y que dicha me-dida es la menos abarcadora para proteger este interés. Los factores antes enunciados no constituyen una lista de cotejo taxativa que se tenga que cumplir textualmente en todos los casos, sino que son elementos que ayudan al juz-gador a determinar si el Ministerio Público ha cumplido con su obligación de demostrar la existencia de un riesgo a un interés apremiante que valide la restricción al derecho a juicio público del acusado, e igualmente al derecho de acceso de la ciudadanía y de la prensa a los procedimientos criminales. Véanse: Pueblo v. Pepín Cortés y otros, ante, pág. 988; Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980); Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501 (1984); Press Enterprise Co. v. Superior Court, 478 U.S. 1, (1986); El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993).
Desde Pueblo v. Pepín Cortés y otros, ante, queda claro que la solicitud de cierre de la sala porque un agente en-cubierto ofrecerá su testimonio no se puede conceder automáticamente. Así, pues, es necesario evaluar las par-ticularidades del caso para poder determinar que, en efecto, la seguridad personal del agente o las investigacio-nes en curso se pondrían en riesgo si el testimonio se ofrece en corte abierta. Sin ese eslabón que relacione la medida *210 solicitada con el interés que se desea proteger no se justi-fica la limitación al derecho fundamental a juicio público. Por esta razón, el test de Waller v. Georgia, ante, exige que se consideren otras alternativas al cierre de la sala. Asi-mismo, en Pueblo v. Pepín Cortés y otros, ante, estableci-mos que cuando el agente encubierto continúa en funciones como tal se tiene que probar que el cierre solicitado es la medida menos abarcadora para proteger el interés en cuestión.
Es evidente que el mero hecho de continuar en funcio-nes como agente encubierto no es suficiente para conceder el cierre. En esos casos, la vista de necesidad se dirige a probar ese factor conector entre el interés apremiante y el remedio solicitado, según las circunstancias particulares del caso. Con este propósito, en Pueblo v. Pepín Cortés y otros, ante, esbozamos los factores que el tribunal debe evaluar para determinar si el testimonio del agente en corte abierta pone en peligro un interés apremiante del Estado. Como es de notar, elementos como una relación estrecha entre las investigaciones en curso y la que desem-bocó en la denuncia del imputado, o una cercanía geográ-fica entre las investigaciones, podrían demostrar una nece-sidad de protección que no existe si las investigaciones no se relacionan o se distancian geográficamente.
Pese a lo anterior, la Opinión interpreta a Pueblo v. Pe-pín Cortés y otros, ante, de tal forma que establece que cuando el agente se encuentra en funciones no es necesario presentar prueba adicional que justifique el cierre.(1) Ello, pues determina que aun cuando el derecho del imputado a un juicio público es fundamental, cuando se demuestra que el agente encubierto continúa en funciones resulta evi-dente que su vida y seguridad, como la de su familia, co-rren peligro, y ello constituye un interés apremiante que se debe ponderar adecuadamente.(2) Esta regla per se que es- *211 tablece el Tribunal nos coloca al margen tanto de nuestra Constitución como de la de Estados Unidos. El Vocero de Puerto Rico v. Puerto Rico, ante.
Como se ha señalado, si bien es cierto que existe un interés apremiante del Estado en proteger al agente encu-bierto y a las investigaciones en curso, todavía el Ministe-rio Público tendría que demostrar que el testimonio en corte abierta pondría en peligro ese interés. El Tribunal no aborda este asunto, por lo que determina que el interés en proteger la vida de un agente encubierto es suficiente para justificar el cierre. Pasa directamente a evaluar si hay una proporcionalidad racional entre el remedio solicitado —ce-rrar la sala durante el testimonio del agente— y el interés que se interesa salvaguardar. Así, concluye que cerrar la sala solamente mientras se emite el testimonio del agente encubierto es un remedio relacionado al interés que se de-sea proteger y que es racionalmente proporcional al dere-cho del imputado a un juicio público.
El elemento que se enfatiza es sobre la duración del cierre, pues el Tribunal indica que el foro primario no con-sideró que el cierre solicitado era parcial. Valga aclarar que cuán amplio es el cierre de la sala no incide sobre la justi-ficación para tomar esta acción, sino sobre el cuarto factor de Waller: que el cierre no sea más abarcador de lo necesario. Previo a esta evaluación sobre la amplitud del cierre se requería una determinación de necesidad del cie-rre de la sala. El Tribunal de Primera Instancia no consi-deró este aspecto porque entendió que el Ministerio Pú-blico no lo puso en posición para concluir que el agente corría un peligro particular, por lo que no había necesidad de cerrar la sala.
El cierre de la sala no se puede decretar automática-mente cuando se ofrece el testimonio de un agente encubierto. Al realizar el análisis del caso, el foro primario entendió que no se le colocó en posición para afirmar que la vida o seguridad del agente corrían peligro. No es sufi- *212 cíente con un testimonio en que se asevera que el agente continúa fungiendo como encubierto sin que se conozca si-quiera en qué tipo de investigación o en qué área se llevan a cabo estas investigaciones. Por lo tanto, no era necesario evaluar otras alternativas al cierre de la sala o si el cierre era lo menos abarcador posible.
Incluso, si consideráramos que se probó que el interés apremiante ameritaba protección dado el testimonio, el Ministerio Público no cumplió con demostrar que el cierre era la alternativa menos abarcadora para protegerlo, pues no ofreció alternativas al tribunal. Aun así, la Opinión con-cluye, mediante una retórica difusa e incongruente, que si cuando único se cierra es durante el testimonio del agente encubierto, se cumple con el test de Waller.
Finalmente, el Tribunal expresa que el foro primario no erró, pues no tuvo ante su consideración las alegaciones de amenaza a la vida del agente que la Procuradora General señala en su Escrito en Cumplimiento de Orden ante esta Curia. Estas expresiones son ciertamente alarmantes. El Tribunal confirma la actuación del Tribunal de Apelaciones a base de unos hechos que se alegan por vez primera ante este Foro. Este proceder atenta contra principios básicos de nuestro Sistema Judicial. Es ante el Tribunal de Pri-mera Instancia que se desfila la prueba que sustenta las alegaciones de las partes; es ése el foro competente para realizar determinaciones de hecho. La tarea revisora de los tribunales apelativos se limita a la decisión impugnada y la evidencia relacionada que se haya presentado en el foro inferior. No nos confiere la autoridad para tomar por cier-tas las alegaciones que presentan las partes en sus escritos cuando la parte contraria no ha tenido oportunidad de re-futar con otra prueba ni el foro primario ha pasado juicio sobre ellas. La deferencia que merecen las determinacio-nes de hecho del Tribunal de Primera Instancia exige que nos circunscribamos a analizar si su actuación se justifi- *213 caba conforme a los hechos presentados y probados ante ese foro. Pueblo v. Falcón Negrón, 126 D.P.R. 75 (1990).
Acoger ese planteamiento en esta etapa implicaría dejar inoperante la vista de necesidad que se llevó a cabo. Por imperativo del debido proceso de ley, la parte contraria tiene derecho a que se le brinde la oportunidad de refutar con evidencia una alegación de esa naturaleza en una vista. Por lo tanto, es en la vista de necesidad donde se debió presentar cualquier evidencia pertinente para deter-minar la necesidad del cierre de la sala, de otro modo se reduce esta exigencia del derecho a juicio público en un procedimiento pro forma.
III
En el presente caso, el Ministerio Público solicitó el cie-rre de la vista preliminar mientras testifica el agente en-cubierto 08NAI29. El Tribunal de Primera Instancia, con-forme a nuestros pronunciamientos en Pueblo v. Pepín Cortés y otros, ante, celebró una vista de necesidad para auscultar la razonabilidad del pedido del Estado.
De acuerdo con la evidencia presentada en la vista de necesidad, el Ministerio Público sólo pudo probar, me-diante el testimonio del agente Báez Nieves, que el agente 08NAI29 todavía se encontraba en funciones como agente encubierto. Si bien es cierto que la solicitud contenía una alegación de que el agente continuaba labores en Caguas, este hecho no se probó. No se presentó evidencia sobre el tipo de investigaciones en que estaba trabajando o si se relacionaban con los cargos imputados al Sr. Elicier Díaz. Tampoco se consignó que éste haya recibido amenazas o que temiera por su seguridad o la de su familia.
A base de dichas determinaciones de hecho, el foro pri-mario concluyó que el Ministerio Público no cumplió con su carga de probar la necesidad de proteger un interés apre- *214 miante mediante el cierre de la vista preliminar durante el testimonio del agente 08NAI29. No erró al así concluir. Al examinar las determinaciones de hecho consignadas en la resolución del foro primario, somos del criterio que lo pro-bado en la vista de necesidad fue insuficiente para estable-cer la necesidad de mantener cerrada la vista preliminar durante el testimonio del mencionado agente. No se pre-sentó prueba que relacione el testimonio del agente con un riesgo al interés apremiante, por lo que no se puede validar la restricción al derecho a juicio público del acusado.
No obstante, como indicamos anteriormente, el Tribunal de Apelaciones revocó al foro de instancia y este Tribunal confirma su actuación. Fundamentan su proceder en qué el Ministerio Público probó que el agente 08NAI29 todavía se encontraba en funciones y que la solicitud de exclusión del público ocurriría solamente durante el testimonio del agente, no durante toda la vista preliminar. Reiteramos que el hecho de que un agente encubierto aún se mantenga en funciones, de suyo, no es suficiente para validar la au-sencia de público en una vista preliminar o en un juicio.
Resolver de esa manera significaría que ante un re-clamo del Ministerio Público de que testificará un agente encubierto que aún se encuentra en funciones, el tribunal debe desalojar automáticamente al público de la vista. Eso fue, precisamente, lo que catalogamos como constitucional-mente impermisible en Pueblo v. Pepín Cortés y otros, ante, pues lo impedía tanto el derecho a juicio público del acu-sado como el derecho de la ciudadanía y de la prensa en presenciar los procedimientos criminales, al amparo de los derechos de libertad de expresión y de prensa. Id. Aunque los factores incluidos en ese caso no constituyen una lista de cotejo taxativa, ciertamente es necesario probar algo más que simplemente establecer que el agente encubierto aún se encuentra en funciones. Ello no ocurrió aquí.
No hay duda de que la labor de los agentes encubiertos es un arma de investigación necesaria para esclarecer la *215 comisión de ciertos delitos que se distinguen por su carac-terística esencial de clandestinidad y dicha función está revestida de cierta peligrosidad. Pueblo v. Carballosa y Balzac, 130 D.P.R. 842, 851 (1992). No obstante, como es-tablecimos en Pueblo v. Pepín Cortés y otros, ante, aun cuando la protección de estos agentes puede constituir un interés apremiante del Estado, es necesario demostrar en una vista de necesidad que en el caso específico se justifica el cierre de la vista preliminar al público y que esa es la medida menos abarcadora para lograr el interés estatal. No podemos olvidar que se trata de dejar de lado derechos constitucionales de la más alta jerarquía, como lo son el derecho del acusado a un juicio público y las libertades de expresión y prensa. Por lo tanto, en ningún escenario el cierre es automático con sólo establecer que el agente en-cubierto se encuentra en funciones, sino que es necesario analizar los factores establecidos en Pueblo v. Pepín Cortés y otros, y todos aquellos que puedan ser pertinentes al caso, con el propósito de determinar si la medida solicitada es necesaria o adelanta, en el caso particular, el interés apremiante.
El Tribunal fundamenta su Opinión en que procede con-ceder el pedido por ser razonable, por ser la solicitud de cierre de la vista preliminar parcial únicamente durante el testimonio del agente 08NAI29. No tiene razón. Como es de notar, dicha medida va dirigida a demostrar que la li-mitación a los derechos constitucionales concernidos no es más abarcadora de lo necesario para proteger el interés estatal. Lo que ocurre es que en el presente caso no se cumplió con el paso anterior, esto es, demostrar la necesi-dad del cierre para proteger el interés apremiante del Estado. Como indicamos anteriormente, no es suficiente demostrar que el agente encubierto está en funciones, sino que hay que analizar los factores expuestos en Pueblo v. Pepín Cortés y otros, ante, para auscultar si se justifica el cierre de la vista preliminar. Al analizar los factores con- *216 cernidos en este caso, concluimos —al igual que el foro de instancia— que no se cumplió con el estándar de escrutinio estricto. Por lo tanto, que presentó el Estado no fue sufi-ciente para validar el cierre de la vista preliminar, sea éste total o parcial.
En cuanto al hecho de que el Ministerio Público incluyó en las denuncias presentadas contra el Sr. Elicier Díaz el nombre y número de placa reales del agente 08NAI29, con-sideramos que esa acción, aunque denota cierto descuido del Ministerio Público en proteger la identidad del agente en cuestión, no convirtió en inoficioso el pedido del Estado. Es decir, ese hecho, por sí solo, no es el causante de la denegatoria al pedido del Estado. No obstante, recalcamos, al igual que lo hicimos en Pueblo v. Pepín Cortés y otros, ante, que las medidas tomadas por el Estado para proteger la identidad de un agente encubierto, o la ausencia de és-tas, son un factor a considerar al momento de determinar si procede el cierre de una vista preliminar o de un juicio.
IV
En el caso de autos, el Tribunal de Primera Instancia concedió una vista de necesidad ante una solicitud de cie-rre parcial de la vista preliminar. Luego de ponderar los factores esbozados en Pueblo v. Pepín Cortés y otros, ante, determinó que no se justificaba el cierre, pues no se demos-tró la necesidad de proteger un interés apremiante del Estado. El Tribunal de Apelaciones revocó la determina-ción del foro primario, actuación que hoy avala este Tribunal. Al así resolver, este Foro debilita la norma esta-blecida en Pueblo v. Pepín Cortés y otros, ante, y autoriza una exclusión automática del público cada vez que un agente encubierto presta testimonio. Esta Opinión, ade-más de socavar un derecho fundamental del imputado, atenta contra nociones básicas de nuestro ordenamiento *217 judicial, pues acoge como ciertas las alegaciones de una de las partes sin respetar el principio de deferencia a las de-terminaciones de hecho del foro primario.
Disiento del curso de la Mayoría por considerar que en este caso —según las determinaciones de hecho realizadas por el Tribunal de Primera Instancia— no procedía la soli-citud del Ministerio Público de cerrar parcialmente la vista preliminar al público.

 Opinión mayoritaria, pág. 200.

 Opinión mayoritaria, pág. 201.